## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| **RO CHER ENTERPRISES, INC.**, | |
| Plaintiff, | |
| v. | Case No. _____ |
| **UNITED STATES ENVIRONMENTAL PROTECTION AGENCY**; **MICHAEL S. REGAN**, Administrator of EPA; **DEBRA SHORE**, Regional Administrator, EPA Region 5; **MICHAEL D. HARRIS**, Division Director, Enforcement and Compliance Assurance Division, EPA Region 5, | |
| Defendants. | |

## VERIFIED COMPLAINT
## FOR INJUNCTIVE AND DECLARATORY RELIEF

Ro Cher Enterprises, Inc. is a small, family-owned business founded in 1983 and still operated by husband-and-wife Roger and Cheryl Janakus. Ro Cher sells doors and windows mainly through its warehouse store in Downers Grove, Illinois. The Environmental Protection Agency has commenced an unconstitutional in-house proceeding against Ro Cher alleging eight paperwork violations of the Toxic Substances Control Act (TSCA). Ro Cher denies the allegations and, in any event, EPA does not allege that toxic substances were mishandled. But EPA nonetheless seeks an order—from itself—imposing penalties against Ro Cher for up to $46,989 per violation per day—*i.e.*, up to almost $400,000 *per day*.

This Court's attention is required because EPA's proceeding suffers from constitutional defects that inflict upon Ro Cher "here-and-now" injuries which can be remedied only by an Article III court.

- 1 -

EPA's action against Ro Cher is unconstitutional under the Appointments Clause, Article III, and the Constitution's numerous guarantees of fair process. Neither the individual presiding over the action (purportedly an administrative law judge (ALJ)) nor members of the EPA's Administrative Appeals Board, which reviews initial ALJ decisions, were properly appointed to office. They therefore lack the authority to carry out the functions of those offices, and their actions are void. EPA's in-house proceeding violates Article III because EPA's claims against Ro Cher must be adjudicated in an Article III court in front of an independent, life-tenured judge. EPA's in-house proceeding also violates Ro Cher's Fifth Amendment right to Due Process of Law and its Seventh Amendment Right to a jury. Finally, EPA seeks a penalty against Ro Cher that violates the Eighth Amendment's bar on excessive fines.

Ro Cher's "here-and-now" irreparable constitutional injuries continue so long as EPA's in-house proceeding continues. Through this Verified Complaint, Ro Cher asks the Court to issue an order (a) declaring EPA's proceeding and requested penalty unconstitutional, and (b) temporarily and permanently enjoining EPA from continuing its in-house proceeding.

## JURISDICTION AND VENUE

1.     This action arises under the Constitution and laws of the United States, and this Court has federal-question jurisdiction under Article III of the Constitution and 28 U.S.C. § 1331. *See Axon Enter., Inc. v. FTC*, 598 U.S. 175 (2023).

2.     Jurisdiction is also proper under the Due Process Clause of the Fifth Amendment to the United States Constitution.

3.    The Court has jurisdiction to issue declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202, and 28 U.S.C. § 1361.

4.    Venue is proper under 28 U.S.C. § 1391(e).

## THE PARTIES

5.    Plaintiff Ro Cher Enterprises, Inc. is an Illinois corporation, with its principal place of business in Downers Grove, Illinois.

6.    Defendant United States Environmental Protection Agency is an executive agency of the United States.

7.    Defendant Michael S. Regan is the Administrator of EPA and is sued in his official capacity.

8.    Defendant Debra Shore is the Regional Administrator of EPA Region 5 and is sued in her official capacity.

9.    Defendant Michael D. Harris is the Division Director, Enforcement and Compliance Assurance Division, EPA Region 5, and is sued in his official capacity.

## BACKGROUND
### *Ro Cher Enterprises*

10.    Ro Cher is a family-owned company founded in 1983 by the husband-and-wife team of Roger Janakus and Cheryl Janakus.

11.    Before starting Ro Cher more than 40 years ago, Roger worked as a general contractor building homes and additions. Like most contractors at the time, he bought doors and windows at lumberyards. But also like many contractors, he found the selection of doors and windows, and the knowledge of lumberyard employees, se-

verely lacking. Roger saw an opportunity to create a business serving both contractors and homeowners—an outlet offering extensive knowledge about considerations that go into deciding on the right doors and windows, including styles, materials, glass options, function, quality, and cost. Roger and Cheryl came up with the idea for a Door & Window Warehouse Outlet to fill this unmet service.

12.     Now, Ro Cher sells doors and windows, primarily from its showroom in Downers Grove, Illinois. It has a few full-time and part-time employees.

13.     At all times relevant to EPA's administrative complaint: Aside from helping customers select the right doors and windows, Ro Cher has also referred customers to factory-trained installation companies that Ro Cher knows and trusts. The installation companies are not affiliated with Ro Cher—they are all independent contractors. If a Ro Cher customer buys doors or windows and asks for an installation reference, Ro Cher offers a referral, after which the installation company contacts the customer, arranges for an in-home inspection, verifies measurements, and returns the information to Ro Cher's sales staff to ensure the customer receives the correct products. When the products arrive at Ro Cher, Ro Cher alerts the installer, who arranges an installation date with the customer. The installation companies, as independent contractors, also do work for customers of other door-and-window companies. None of the installers are or have ever been Ro Cher employees. Ro Cher does not receive a "finder's fee" from the installation companies or percentage of the fees charged by the installation companies.

14. At all times relevant to EPA's administrative complaint, Ro Cher did not perform or direct renovations or installations.

15. At all times relevant to EPA's administrative complaint, Ro Cher itself did not perform or direct renovations or installations for compensation.

16. During the four decades in which Ro Cher has been in business, it has served over 100,000 customers. Most of its business comes through repeat customers and referrals. Ro Cher looks forward to many more years of providing excellent products and service to its existing and future customers.

### EPA's Unconstitutional
### Administrative Proceeding Against Ro Cher

17. The Constitution divides the federal government's power into three separate branches: Legislative, Executive, and Judicial. This structure purposefully diffuses the government's power to secure the liberty and property of the governed. When the government seeks to restrict liberty and property—as it does here—it must proceed through all three branches. That is, the Executive Branch must enforce a law enacted by Congress (with the President's signature or with a veto-proof majority), and the Executive must prove its case in front of an independent, life-tenured judge and, where appropriate, jury. Here, therefore, EPA's administrative adjudication violates the Constitution's separation of powers by concentrating the government's diffuse powers. EPA lawyers initiated an enforcement action in EPA's own tribunal—not an Article III court—before another EPA employee—who is not an independent, Article III judge. An appeal of an initial decision goes to EPA's Environmental Appeals Board, which is also not an Article III court. In effect, therefore, *EPA seeks a*

*ruling from itself* that Ro Cher violated the TSCA and should pay exorbitant penalties.

18.     EPA, by a purportedly lawful delegation to Defendant Michael D. Harris, filed an in-house complaint against Ro Cher. *See In the Matter of Ro Cher Enterprises, Inc. a/k/a Door and Window Warehouse Outlet, Inc., Door and Window Warehouse, Co. and/or Door and Window Superstore*, EPA Docket No. TSCA-05-2023-004 (*Ro Cher Matter*). Attached as **Exhibit 1** is a true and correct copy of EPA's administrative complaint (without its exhibits) in the *Ro Cher Matter*.[1]

19.     EPA alleges violations of Subchapter IV of the TSCA, 15 U.S.C. §§ 2601–2629, 2681–2692 (Lead Exposure Reduction), and seeks civil penalties of up to $46,989 per violation per day.

20.     Relevant here, the TSCA imposes requirements concerning the renovation of "target housing," *i.e.*, "housing constructed prior to 1978, except housing for the elderly or persons with disabilities or any 0-bedroom dwelling (unless any child who is less than 6 years of age resides or is expected to reside in such housing)." 15 U.S.C. § 2681(17). *See also id.* ("In the case of jurisdictions which banned the sale or use of lead-based paint prior to 1978, the Secretary of Housing and Urban Development, at the Secretary's discretion, may designate an earlier date.").

21.     The TSCA also required EPA to promulgate regulations to administer the law. *See, e.g.*, 15 U.S.C. § 2682 (requiring EPA Administrator to promulgate guidelines for reducing lead exposure during renovations of target housing).

---

[1] *See* https://yosemite.epa.gov/oarm/alj/alj_web_docket.nsf/f22b4b245fab46c6852570e6004d f1bd/9930a0f3413f3a98852589e500427b04!OpenDocument.

22.    EPA promulgated relevant regulations at 40 C.F.R. Part 745, Subpart E (Residential Property Renovation) and Subpart L (Lead-Based Paint Activities).

23.    The TSCA requires that renovations and remodeling of target housing for compensation be carried out by those with EPA certificates. 15 U.S.C. § 2682; 40 C.F.R. Subpart E; *see also* 40 C.F.R. § 745.83 (defining renovation to mean, inter alia, the "modification of any existing structure, or portion thereof" but not "minor repair and maintenance activities").

24.    EPA also promulgated regulations for "work practice standards." 40 C.F.R. § 745.85. Those who perform renovations must, for example, "post signs clearly defining the work area and warning occupants and other persons not involved in renovation activities to remain outside of the work area"; "isolate the work area so that no dust or debris leaves the work area while the renovation is being performed"; for interior renovations, "[c]over the floor surface, including installed carpet, with taped-down plastic sheeting or other impermeable material in the work area 6 feet beyond the perimeter of surfaces undergoing renovation or a sufficient distance to contain the dust, whichever is greater"; for exterior renovations, "[c]over the ground with plastic sheeting or other disposable impermeable material extending 10 feet beyond the perimeter of surfaces undergoing renovation or a sufficient distance to collect falling paint debris, whichever is greater, unless the property line prevents 10 feet of such ground covering"; contain waste "to prevent releases of dust and debris before the waste is removed from the work area for storage or disposal"; and verify that no

dust, debris, and residue from renovations remain. *Id.* §§ 745.85(a)(1), (a)(2), (a)(2)(i)(D), (a)(4)(i), (b)(1)(a).

25.     Those who perform renovations of target housing for compensation must provide an EPA pamphlet concerning lead hazards and obtain written confirmation of receipt from the owners or occupiers of target housing. 15 U.S.C. § 2686(b); 40 C.F.R. § 745.84.

26.     It is "unlawful for any person to fail or refuse to comply with" 15 U.S.C. §§ 2681–2692 or "with any rule or order issued under" §§ 2681–2692. *Id.* § 2689.

27.     EPA filed its administrative complaint against Ro Cher in April 2023, alleging violations of the TSCA.

28.     EPA alleges that Ro Cher was a "firm" as defined by 40 C.F.R. § 745.83; that Ro Cher contracted, for compensation, to replace windows at seven residences that met the definition of "target housing"; that Ro Cher's "subcontractor" performed renovations at these residences; that Ro Cher did not have an EPA certificate when these renovations were performed; and that Ro Cher did not obtain written acknowledgements from the residences' owners that they had received the EPA lead-hazards pamphlet. *See* Ex. 1, EPA Admin. Compl. ¶¶ 37, 47–60, 74–84.

29.     Based on these allegations, EPA asserts eight violations of the TSCA: one violation for failure to have a firm certification and seven violations for failing to obtain written acknowledgements of receipt of the EPA lead-hazards pamphlet. *See* Ex. 1, EPA Admin. Compl. ¶¶ 63–84.

30. EPA does not allege that lead-based paint—or any other substance subject to the TSCA—was in any way mishandled; nor does EPA allege that any lead-related hazards occurred.

31. Nonetheless, through its in-house proceeding, EPA seeks—*from itself*—a determination that Ro Cher failed to obtain an EPA Firm Certification pursuant to 40 C.F.R. §§ 745.89(a) and 745.81(a)(2)(ii), and 15 U.S.C. § 2689. Ex. 1, EPA Admin. Compl. ¶¶ 63–73.

32. Further, through this in-house proceeding, EPA seeks—*from itself*—a determination that Ro Cher failed to obtain written acknowledgements from the owners of seven single-family dwelling units pursuant to 40 C.F.R. § 745.84 and 15 U.S.C. § 2689. Ex. 1, EPA Admin. Compl. ¶¶ 74–84.

33. Finally, through its in-house proceeding, EPA seeks—*from itself*—an order compelling Ro Cher to pay a civil penalty of up to $49,989 per violation per day, in addition to any other relief that "this [EPA] Court [sic] may deem just and proper." Ex. 1, EPA Admin. Compl. ¶¶ 34, 88.

### The Constitution's
### Structural Protections Against Arbitrary Power

34. The Constitution vests "[a]ll legislative Powers herein granted" in Congress. U.S. CONST. art. I, § 1.

35. The Constitution vests all of "[t]he executive Power in [the] President of the United States," who is duty-bound to "take Care that the Laws be faithfully executed." U.S. CONST. art. II, § 1, cl. 1; § 3.

36.     The Constitution provides for executive officers to help the President carry out his obligations.

37.     The Appointments Clause of the United States Constitution requires all "Officers of the United States" to be appointed pursuant to its requirements. U.S. CONST. art. II, § 2, cl. 2. The Appointments Clause helps ensure that officers are accountable to the President and, through the President, to the people.

38.     An officer is any government official who holds a continuing office vested with significant authority and discretion under federal law. Any position vested with this power—*i.e.*, any "office" of the United States—must be filled pursuant to the Appointments Clause.

39.     The Appointments Clause recognizes two types of officers: those who exercise significant authority and those who don't. The first, typically called "principal" officers, must be nominated by the President and confirmed by the Senate. The second, known as inferior officers, must also be appointed by the President and confirmed by the Senate, except that Congress may "by Law" authorize the President alone, the Courts of Law, or the Heads of Departments to appoint inferior officers. U.S. CONST. art. II, § 2, cl. 2.

40.     The Constitution also established a judiciary—independent of the legislative and executive branches. The Constitution vests "[t]he judicial Power of the United States . . . in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish." U.S. CONST. art. III, § 1. To further ensure independent judgment, the Constitution provides that the "Judges, both of the

supreme and inferior Courts shall hold their Offices during good Behaviour, and shall, at stated Times, receive for their Services, a Compensation, which shall not be diminished during their Continuance in Office." *Id*. Article III guarantees an impartial and independent federal adjudication concerning the potential deprivation of private rights—such as restrictions on lawful businesses and impositions of monetary penalties—and it precludes the exercise of core judicial power by a coordinate branch of government.

### *The Environmental Protection Agency's*
### *Structural Constitutional Defects*

41. EPA was established through Reorganization Plan No. 3 of 1970, not through an enabling act of Congress. 84 Stat. 2086 (Dec. 2, 1970), as amended, *reprinted in* 5 U.S.C. app. 1. *See id*. § 1(a).

42. EPA is headed by an Administrator, who is nominated by the President and confirmed by the Senate. *Id*. § 1(b); 40 C.F.R. § 1.23.

43. EPA consists of a Headquarters and ten Regional Offices. 40 C.F.R. §§ 1.5, 1.61. Each Regional Office is headed by a Regional Administrator, who is responsible for, inter alia, enforcement within the respective region. *Id*. § 1.61(d).

44. EPA is authorized to seek civil penalties for violations of the TSCA through administrative hearings in accordance with 5 U.S.C. § 554. *See* 15 U.S.C. § 2615(a)(2)(A).

45. As noted above, EPA's administrative action against Ro Cher is brought—through a purportedly lawful delegation—in the name of Defendant

Michael D. Harris, Director of the Enforcement and Compliance Assurance Division for EPA Region 5. *See* Ex. 1, EPA Admin. Compl. ¶ 2.

46.     EPA prosecutes its in-house administrative actions pursuant to its Consolidated Rules of Practice Governing the Administrative Assessment of Civil Penalties and the Revocation/Termination or Suspension of Permits, 40 C.F.R., Part 22 (Consolidated Rules); *see* 40 C.F.R. § 22.1(a)(5). *See* Ex. 1, EPA Admin. Compl. ¶ 89.

47.     EPA administrative adjudications are overseen by a "Presiding Officer," who must be an administrative law judge (ALJ). 40 C.F.R. § 22.3(a); *see also* 5 U.S.C. § 556(b)(3).

48.     Respondents are not afforded a jury in EPA's administrative hearings.

49.     Here, Susan L. Biro, purportedly EPA's Chief Administrative Law Judge, designated herself to preside over the *Ro Cher Matter*. *See* July 13, 2023 Order of Designation. A true and correct copy of this order is attached as **Exhibit 2**.[2]

50.     Ms. Biro was purportedly appointed to office by EPA's Administrator. *See* **Exhibit 3**; https://www.epa.gov/system/files/images/2022-01/biro-epa-alj-certificate-of-appointment-5-23-1997.jpg (last visited Nov. 15, 2023); *see generally* https://www.epa.gov/aboutepa/epas-administrative-law-judges (last visited Nov. 15, 2023).

51.     EPA ALJs are not appointed by the President or confirmed by the Senate.

---

[2] *See* https://yosemite.epa.gov/oarm/alj/alj_web_docket.nsf/f22b4b245fab46c6852570e6004df1bd/9930a0f3413f3a98852589e500427b04!OpenDocument.

52. EPA ALJs may not be removed, suspended, or have their pay or pay-grade reduced, except for cause and with the agreement of the Merit Systems Protection Board (MSPB). 5 U.S.C. § 7521 (excepting reductions in force, employment actions taken for national security reasons, and disciplinary actions proposed by a Special Counsel and approved by the MSPB).

53. EPA ALJs wield significant discretionary powers. Among other things, EPA ALJs administer oaths, issue subpoenas and "all necessary orders," "[e]xamine witnesses," rule on the admissibility of evidence, and punish discovery violations with adverse inferences. 40 C.F.R. § 22.4(c) (defining powers of the Presiding Officer); *id*. § 22.3(a) (defining Presiding Officer to be an ALJ); *see also* 5 U.S.C. § 556(c). They also decide questions of both law and fact and, ultimately, decide a respondent's liability in an "initial decision." 40 C.F.R. § 22.27.

54. An ALJ's initial decision becomes EPA's final decision 45 days after service to the parties, unless a party appeals the initial decision to EPA's Environmental Appeals Board (EAB) or the EAB initiates review *sua sponte*. 40 C.F.R. § 22.27(c). A finalized ALJ decision "constitutes the final Agency action." *Id*. § 22.31(a).

55. If the ALJ's initial decision is reviewed by the EAB, the EAB may "adopt, modify, or set aside the findings of fact and conclusions of law or discretion." 40 C.F.R. § 22.30(f). After completing its review, the EAB issues its decision in a final order, which "constitutes the final Agency action." *Id*. § 22.31(a).

56. The EAB typically sits in three-member panels and decides cases by majority vote.

57.     The EAB is composed of four members of the career Senior Executive Service.

58.     As members of the career Senior Executive Service, EAB members are selected through the civil service's merit staffing process, which identifies the most qualified applicants based on non-political criteria.

59.     Members of the career Senior Executive Service cannot be fired without cause or, during changes in leadership, *see* 5 C.F.R. § 317.901, be reassigned out of their positions without their consent.

60.     EAB members are not nominated by the President or confirmed by the Senate.

61.     The EPA Administrator designates EAB members from among those identified as most qualified. 40 C.F.R. § 1.25(e)(1).

62.     The parties may not appeal to the EPA Administrator from an ALJ or EAB decision (except where the decision is directed against another federal agency). 40 C.F.R. § 22.31(e)(1). Nor may the Administrator initiate review of an ALJ or EAB decision. *Id*. § 22.4(a)(1). Instead, the Administrator may consider matters only if and when the EAB allows him to do so "in its discretion." *Id*. In such a case, the decision of the Administrator constitutes the final agency action. *See id.*; *id*. § 22.31(a).

63.     Only after this process is complete may the unsuccessful respondent seek review in a court of law. 15 U.S.C. § 2615(c).

### *Ro Cher's Here-and-Now Constitutional Injuries*
### *Continue So Long as EPA's Proceeding Continues*

64.    EPA's administrative adjudicatory scheme hales Ro Cher before an individual who was never constitutionally appointed as an ALJ and who therefore lacks the power of that office. And EPA's proceeding compels Ro Cher to plead its case in an unlawfully constituted forum.

65.    Moreover, review of initial decisions is carried out by EPA's Environmental Appeals Board, whose members were not validly appointed. Accordingly, EAB members lack the authority of that office, and they cannot lawfully oversee or review initial administrative decisions.

66.    EPA's administrative proceeding also deprives Ro Cher of its constitutional rights guaranteed under Article III and the Fifth, Seventh, and Eighth Amendments.

67.    This case is currently justiciable because EPA's administrative adjudication has been initiated, and Ro Cher is currently subject to EPA's and Ms. Biro's authority in the administrative adjudication.

68.    Because of these constitutional violations, Ro Cher is suffering "here-and-now" constitutional injuries that can be remedied (only) by an Article III court.

69.    Ro Cher's injuries continue as long as it remains subject to EPA's in-house proceeding.

70.    And Ro Cher's injuries are impossible to remedy once the proceeding is over, because, at that point, Ro Cher will have lost its right not to undergo the EPA's in-house proceeding.

71.     Nor can Ro Cher obtain a remedy for its structural constitutional claims through judicial review after EPA's proceeding is over because a proceeding that has already happened cannot be undone. Judicial review would come too late.

72.     Money damages in this case are not available to Ro Cher.

73.     Therefore, Ro Cher has no plain, speedy, and adequate remedy at law for its injuries.

74.     Without this Court's review, Ro Cher will be irreparably harmed by being compelled to defend itself before an unconstitutionally structured proceeding, in front of a presiding officer who was not properly appointed to an ALJ office and who is overseen by other officials (members of the EAB) who were not validly appointed to office, and in violation of Ro Cher's rights guaranteed by Article III, and the Fifth, Seventh, and Eighth Amendments.

75.     A decision declaring that Ms. Biro was not validly appointed under the Appointments Clause and thus without power to preside over the adjudication, and an injunction preventing Ms. Biro from so presiding, would remedy Ro Cher's here-and-now injury.

76.     A decision declaring that members of the EPA's Administrative Appeals Board were not validly appointed under the Appointments Clause and thus without power of that office, and an injunction preventing them from so acting, would remedy Ro Cher's here-and-now injury.

77. A decision declaring that, because the judicial power of the United States is vested solely in the judicial branch, EPA's administrative proceeding violates Article III of the Constitution, and an injunction preventing EPA from proceeding against Ro Cher in-house, would remedy Ro Cher's injury.

78. A decision declaring that EPA's administrative proceeding violates the Due Process Clause of the Fifth Amendment to the Constitution, and an injunction preventing EPA from proceeding against Ro Cher in-house, would remedy Ro Cher's injury.

79. A decision declaring that EPA's administrative proceeding violates the Seventh Amendment to the Constitution, and an injunction preventing EPA from proceeding against Ro Cher in-house, would remedy Ro Cher's injury.

80. An order declaring that EPA's administrative action against Ro Cher violates the Eighth Amendment to the Constitution would remedy Ro Cher's injury.

81. Therefore, declaratory and injunctive relief are appropriate to resolve this controversy.

## COUNT I

### Ms. Biro Was Not Properly Appointed Under the Appointments Clause, U.S. Const. art. II, § 2, cl. 2

82. The preceding paragraphs are incorporated by reference.

83. EPA's in-house proceedings are conducted under the Administrative Procedure Act (5 U.S.C. §§ 551–559) and the procedures set forth in 40 C.F.R. Part 22.

84.     Susan L. Biro is purportedly the Chief Administrative Law Judge of the EPA.

85.     EPA ALJs possess significant and continuing federal authority. For example, ALJs possess the authority to take testimony, conduct trials, rule on the admissibility of evidence, punish a party's failure to comply with a discovery order, and decide cases.

86.     EPA ALJs are officers of the United States.

87.     EPA ALJs are executive officers of the United States.

88.     EPA ALJs are principal officers of the United States.

89.     As principal officers, EPA ALJs must be appointed by Presidential nomination and Senate confirmation. U.S. CONST. art. II, § 2, cl. 2.

90.     Ms. Biro was neither nominated by the President nor confirmed by the Senate.

91.     Accordingly, Ms. Biro has not been validly appointed as a principal officer under the Appointments Clause and thus has never been appointed as an EPA ALJ.

92.     Ms. Biro therefore lacks the authority of an EPA ALJ, including the authority to conduct the administrative adjudication to which Ro Cher is currently subject.

93.     Alternatively, even if EPA ALJs are inferior officers, Ms. Biro has not been validly appointed as an inferior officer under the Appointments Clause and thus was never appointed as an EPA ALJ.

94.     Ms. Biro has not been appointed by the default method for inferior offic-ers, *i.e.*, Presidential nomination and Senate confirmation. U.S. CONST. art. II, § 2, cl. 2.

95.     Additionally, Congress has not "by Law" vested the appointment of ALJs in the President, a head of department, or a court of law.

96.     Ms. Biro was not validly appointed by the President, a head of depart-ment, or a court of law.

97.     Therefore, whether Ms. Biro is a principal or inferior officer, she was not validly appointed to office, she lacks the authority to oversee and review the *Ro Cher Matter*, and her actions are void.

## COUNT II

### EAB MEMBERS WERE NOT PROPERLY APPOINTED UNDER THE APPOINTMENTS CLAUSE, U.S. CONST. ART. II, § 2, CL. 2

98.     The preceding paragraphs are incorporated by reference.

99.     The Environmental Appeals Board (EAB) is a "permanent body," 40 C.F.R. § 1.25(e)(1), composed of four members of the Senior Executive Service (SES) selected by the EPA Administrator, 5 U.S.C. § 3131; *see also The EPA's Environmen-tal Appeals Board at Twenty-five: An Overview of the Board's Procedures, Guiding Principles, and Record of Adjudicating Cases* at 2.[3]

100.    The salary of an SES member is defined by 5 U.S.C. § 3131 (providing authority to the U.S. Office of Personnel Management to promulgate regulations) and 5 C.F.R. § 214.201 (setting SES pay level).

---

[3] *See* https://yosemite.epa.gov/oa/EAB_Web_Docket.nsf/8f612ee7fc725edd852570760071cb8e/381acd4d3ab4ca358525803c00499ab0/$FILE/The%20EAB%20at%20Twenty-Five.pdf.

101. EAB members wield significant authority because they exercise significant discretion when carrying out important functions.

102. EAB members are officers of the United States.

103. EAB members are executive officers of the United States.

104. EAB members are principal officers of the United States.

105. As principal officers, EAB members must be appointed by the President and confirmed by the Senate. U.S. CONST. art. II, § 2, cl. 2.

106. EAB members were neither appointed by the President nor confirmed by the Senate.

107. Accordingly, EAB members have not been validly appointed as principal officers under the Appointments Clause and, therefore, have not been properly appointed to the EAB.

108. EAB members therefore lack the authority of those offices.

109. Alternatively, even if EAB members are merely inferior officers, they have not been properly appointed under the Appointments Clause.

110. Congress did not authorize the EPA Administrator or anyone else to appoint EAB members "by Law." U.S. CONST. art. II, § 2, cl. 2.

111. Therefore, EAB members have not been appointed by the EPA Administrator. Nor were EAB members appointed by the President alone or by a court of law. U.S. CONST. art. II, § 2, cl. 2.

112.    Whether EAB members are principal or inferior officers, they were not validly appointed to office, they lack the authority of the EAB office, and their actions are void.

## COUNT III

### EPA IS NOT VESTED WITH THE JUDICIAL POWER OF THE UNITED STATES, AND ITS IN-HOUSE PROCEEDING THEREFORE VIOLATES U.S. CONST. ART. III

113.    The preceding paragraphs are incorporated by reference.

114.    The "judicial Power of the United States" is vested exclusively "in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish." U.S. CONST. art. III, § 1. To help ensure independence, the "Judges, both of the supreme and inferior Courts, shall hold their Offices during good Behaviour, and shall, at stated Times, receive for their Services, a Compensation, which shall not be diminished during their Continuance in Office." *Id*.

115.    The Constitution does not vest the "judicial power of the United States" in the Executive Branch.

116.    Through its in-house action, the *Ro Cher Matter*, EPA seeks an administrative order and judgment determining that Ro Cher violated the TSCA.

117.    Through its in-house action, the *Ro Cher Matter*, EPA seeks an administrative order and judgment compelling Ro Cher to pay civil penalties.

118.    EPA seeks to deprive Ro Cher of private rights.

119.    Before depriving Ro Cher of its private rights, EPA must follow common-law procedure—most fundamentally, by obtaining in the first instance a judgment from an Article III court.

120. Only courts of law, through the exercise of judicial power, may issue *judgments* and deprive private parties of private rights.

121. Presiding over EPA's in-house proceeding against Ro Cher is Susan L. Biro.

122. Ms. Biro is not an Article III judge.

123. EPA is not an Article III court.

124. EPA Region 5 is not an Article III court.

125. The EPA's in-house hearing is not an Article III court.

126. The EAB is not an Article III court.

127. No part of EPA's in-house proceeding against Ro Cher is heard in an Article III court or overseen by an Article III judge.

128. EPA's in house proceeding against Ro Cher therefore violates Article III.

### COUNT IV

**THE EPA'S IN-HOUSE PROCEEDING VIOLATES RO CHER'S DUE PROCESS RIGHTS UNDER U.S. CONST. AMEND. V**

129. The preceding paragraphs are incorporated by reference.

130. The Fifth Amendment to the United States Constitution provides that no person shall be "deprived of life, liberty, or property, without due process of law." U.S. CONST. amend. V.

131. The Due Process of Law Clause guarantees an independent judgment by an independent judge.

132. The "judicial Power of the United States" is vested exclusively "in one supreme Court, and in such inferior Courts as the Congress may from time to time

ordain and establish." U.S. CONST. art. III, § 1. To help ensure independence, the "Judges, both of the supreme and inferior Courts, shall hold their Offices during good Behaviour, and shall, at stated Times, receive for their Services, a Compensation, which shall not be diminished during their Continuance in Office." *Id*.

133.　The Constitution does not vest the "judicial power of the United States" in the Executive Branch.

134.　Through its in-house action, the *Ro Cher Matter*, the EPA seeks an administrative order and judgment—from itself—determining that Ro Cher violated the TSCA and, as a result, that Ro Cher should be compelled to pay a civil penalty of up to $46,989 per violation per day.

135.　The EPA seeks to deprive Ro Cher of private rights.

136.　The government may not deprive any person of private rights except through common-law procedures—most fundamentally, through an Article III court.

137.　Only courts of law, through the exercise of judicial power, may issue *judgments* and deprive private parties of private rights.

138.　Before depriving Ro Cher's private rights, therefore, EPA must follow common-law procedure and seek an independent judgment from an independent, Article III court.

139.　Presiding over EPA's in-house proceeding against Ro Cher is Susan L. Biro.

140.　Ms. Biro is not an Article III judge.

141.　EPA is not an Article III court.

142.    EPA Region 5 is not an Article III court.

143.    The EPA's in-house hearing is not an Article III court.

144.    The EAB is not an Article III court.

145.    No part of EPA's in-house proceeding against Ro Cher is heard in an Article III court or overseen by an Article III judge.

146.    EPA acts as prosecutor, judge, jury, and appellate court in its administrative proceeding against Ro Cher.

147.    To the extent EPA seeks to adopt new, substantive rules or regulations through in-house adjudicatory means, it also acts as a lawmaker.

148.    Additionally, EPA's Consolidated Rules themselves preclude fair hearings.

149.    EPA does not afford litigants the same procedural and evidentiary rights as federal courts do.

150.    For example, while the parties exchange "prehearing information"—*i.e.*, the names of witnesses expected to be called at the hearing and the documents and exhibits intended to be introduced at the hearing—parties must move for additional discovery. 40 C.F.R. § 22.19(a), (e).

151.    Similarly, unlike cases in federal court, the ALJ alone—not an individual party—decides whether subpoenas will issue. 40 C.F.R. § 22.19(e)(4).

152.    Finally, because EPA is both prosecutor and judge, EPA's proceedings violate the ancient maxim—protected by the Due Process Clause—*nemo iudex in causa sua* ("no one should be a judge in his own cause"). *See The Federalist No. 10*

("No man is allowed to be a judge in his own cause; because his interest would certainly bias his judgment, and not improbably, corrupt his integrity.") (Madison).

153.    EPA's in-house proceeding, the *Ro Cher Matter*, violates Ro Cher's Fifth Amendment right to Due Process of Law.

## COUNT V

### EPA's In-House Proceeding Violates Ro Cher's Right to a Jury Under U.S. Const. amend. VII

154.    The preceding paragraphs are incorporated by reference.

155.    The Seventh Amendment to the Constitution provides: "In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved." U.S. Const. amend. VII.

156.    Claims analogous to common law claims that existed at the time of the Seventh Amendment's ratification require a jury.

157.    Claims that seek legal remedies require a jury.

158.    In its in-house administrative action, EPA alleges that Ro Cher violated the TSCA and seeks a civil penalty.

159.    EPA's claim is essentially a common law action in debt for which a jury is required.

160.    Independently, because EPA seeks a civil penalty—*i.e.*, damages—a jury is required.

161.    Accordingly, Ro Cher is entitled to a jury trial in connection with the EPA's allegations that Ro Cher violated the TSCA and complaint for damages.

162.     EPA's failure to afford Ro Cher a jury trial violates Ro Cher's Seventh Amendment right to a jury.

## COUNT VI

**EPA SEEKS AN EXCESSIVE FINE IN VIOLATION OF U.S. CONST. AMEND. VIII**

163.     The preceding paragraphs are incorporated by reference.

164.     According to the Constitution, "excessive fines [shall not be] imposed." U.S. CONST. amend. VIII.

165.     The Eighth Amendment precludes excessive fines in both civil and criminal matters.

166.     Here, EPA seeks a civil penalty in the amount of up to $46,989 per violation per day, in addition to any other relief that "th[e] [EPA] Court [sic] may deem just and proper." Ex. 1, EPA Admin. Compl. ¶¶ 34, 88.

167.     The EPA alleges eight TSCA violations. Therefore, EPA seeks a civil penalty of up to almost $400,000 per day.

168.     Such a penalty is punitive.

169.     Such a penalty is excessive—that is, grossly disproportionate—compared to the paperwork violations of which Ro Cher is accused.

170.     Accordingly, EPA's administrative action for a civil penalty violates Ro Cher's Eighth Amendment right against the imposition of Excessive Fines.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff Ro Cher Enterprises, Inc. prays for relief as follows:

1.     An order declaring that, because Ms. Biro was not properly appointed as an ALJ under the Constitution, EPA's structure violates Article II of the Constitution.

2.     An order declaring that, because the Members of the EPA's Administrative Appeals Board were not properly appointed under the Constitution's Appointments Clause, EPA's structure violates Article II of the Constitution.

3.     An order declaring that, because the judicial power of the United States is vested solely in the judicial branch, EPA's administrative proceeding violates Article III of the Constitution.

4.     An order declaring that EPA's administrative proceeding violates the Due Process Clause of the Fifth Amendment to the Constitution.

5.     An order declaring that EPA's administrative proceeding violates the Seventh Amendment to the Constitution.

6.     An order declaring that EPA's administrative action against Ro Cher violates the Eighth Amendment to the Constitution.

7.     A preliminary and permanent injunction enjoining EPA from continuing its administrative proceeding *In the Matter of Ro Cher Enterprises, Inc. a/k/a Door and Window Warehouse Outlet, Inc., Door and Window Warehouse, Co. and/or Door and Window Superstore*, EPA Docket No. TSCA-05-2023-004.

8.     An award of reasonable attorney's fees and costs, pursuant to 42 U.S.C. § 1988 and any other applicable authority.

9.     All other relief the Court deems just and proper.

DATED:  November 16, 2023.

Respectfully submitted,

 s/ *Oliver J. Dunford*
OLIVER J. DUNFORD
Pacific Legal Foundation
4440 PGA Boulevard, Suite 307
Palm Beach Gardens, FL 33410
916.503.9060
odunford@pacificlegal.org
N.D. Ill. Bar No. 1017791

MOLLY E. NIXON
Pacific Legal Foundation
3100 Clarendon Boulevard, Suite 1000
Arlington, VA 22201
202.888.6881
mnixon@pacificlegal.org
New York Bar No. 5023940*

*Attorneys for Plaintiff*
*Ro Cher Enterprises, Inc.*

***pro hac vice application forthcoming**

DECLARATION

I, ROGER JANAKUS, hereby declare as follows:

1.      I am over the age of 18 and I am competent to make this Declaration.

2.      This Declaration is based on my personal knowledge.

3.      My wife Cheryl Janakus and I founded Ro Cher Enterprises, Inc. in 1983.

4.      I have read the foregoing Verified Complaint for Injunctive and Declaratory Relief in *Ro Cher Enterprises, Inc. v. EPA*, U.S.D.C., N.D. Ill.

5.      The facts alleged in the Verified Complaint are within my personal knowledge, and I know the facts to be true, except for matters stated, "on information and belief," in which case I believe them to be true.

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 15th day of November, 2023, in Paso Robles, California.

_____
ROGER JANAKUS