# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| RO CHER ENTERPRISES, INC.,<br><br>  Plaintiff,<br><br>  v.<br><br>UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, ET AL.,<br><br>  Defendants. | CASE NO. 1:23-CV-16056<br><br><br>JUDGE STEVEN C. SEEGER<br>MAGISTRATE JUDGE HEATHER K. MCSHAIN |

## MEMORANDUM IN SUPPORT OF
## PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

OLIVER J. DUNFORD
Pacific Legal Foundation
4440 PGA Boulevard, Suite 307
Palm Beach Gardens, FL 33410
916.503.9060
odunford@pacificlegal.org
Bar No. 1017791

MOLLY E. NIXON
Pacific Legal Foundation
3100 Clarendon Boulevard, Suite 1000
Arlington, VA 22201
202.888.6881
mnixon@pacificlegal.org
New York Bar No. 5023940*

  *Admitted Pro Hac Vice

*Attorneys for Plaintiff
Ro Cher Enterprises, Inc.*

# TABLE OF CONTENTS

Table of Authorities ..............................................................................................ii

Background & Introduction ................................................................................. 1

Standard of Review............................................................................................... 2

Law & Argument .................................................................................................. 3

I.   Plaintiff is likely to succeed on its Appointments Clause claim ......................... 3

   A.  EPA ALJs are executive officers of the United States .................................. 3

   B.  Ms. Biro was not validly appointed as a principal officer ............................ 4

   C.  EPA is structurally unconstitutional even if the EPA ALJ office is not a principal office........................................................................................ 7

   D.  Summing up: Ms. Biro was not validly appointed to office........................... 10

II.  Plaintiff is likely to succeed on its Seventh Amendment claim ......................... 11

   A.  EPA alleges a legal, common law claim.................................................... 12

   B.  EPA seeks a legal remedy ...................................................................... 13

   C.  *Atlas Roofing* does not alter the conclusion................................................ 13

III. Without an injunction, Ro Cher will suffer irreparable harm, because Ro Cher has no adequate remedy at law .............................. 16

IV.  The balance of equities favors an injunction ..................................................... 19

Conclusion............................................................................................................ 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ala. Ass'n of Realtors v. HHS,*
141 S. Ct. 2485 (2021) ............................................................ 19

*Alpine Secs. Corp. v. FINRA,*
No. 23-5129, 2023 WL 4703307 (D.C. Cir. July 5, 2023) ...................................... 19

*Atlas Roofing Co., Inc. v. Occupational Safety & Health Rev. Comm'n,*
430 U.S. 442 (1977) ............................................................ 13, 14, 15

*Axon Enter., Inc. v. FTC,*
598 U.S. 175 (2023) ............................................................ 1, 2, 17, 18, 20

*Blakely v. Washington,*
542 U.S. 296 (2004) ............................................................ 11

*Burgess v. FDIC,*
639 F.Supp.3d 732 (N.D. Tex. 2022) ............................................................ 16–17, 19

*Chamber of Commerce v. Edmonson,*
594 F.3d 742 (10th Cir. 2010) ............................................................ 19

*City of Chicago v. Sessions,*
888 F.3d 272 (7th Cir. 2018) ............................................................ 18

*City of Evanston v. Barr,*
412 F.Supp.3d 873 (N.D. Ill. 2019) ............................................................ 19

*Cochran v. SEC,*
20 F.4th 194 (5th Cir. 2022) (en banc),
*aff'd sub nom. Axon,* 598 U.S. 175 ............................................................ 17

*Curtis v. Loether,*
415 U.S. 189 (1974) ............................................................ 14

*Edmond v. United States,*
520 U.S. 651 (1997) ............................................................ 3, 5, 6, 8, 9, 10

*Ezell v. City of Chicago,*
651 F.3d 684 (7th Cir. 2011) ............................................................ 2, 16

*Feltner v. Columbia Pictures Television, Inc.,*
523 U.S. 340 (1998) ............................................................ 14

*Free Enter. Fund v. PCAOB,*
561 U.S. 477 (2010) ............................................................ 17

*Free the Nipple–Fort Collins v. City of Fort Collins,*
916 F.3d 792 (10th Cir. 2019) ............................................................ 16

*Freytag v. Comm'r*,
501 U.S. 868 (1991) ................................................................................ 3, 8

*Granfinanciera, S.A. v. Nordberg*,
492 U.S. 33 (1989) ............................................................................... 14, 15

*Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114 (10th Cir. 2013),
*aff'd sub nom.*, *Burwell v. Hobby Lobby Stores, Inc.*,
134 S. Ct. 2751 (2014) ............................................................................ 19

*Jarkesy v. SEC*,
34 F.4th 446 (5th Cir. 2022), *pet. for rehearing en banc denied*,
51 F.4th 644 (5th Cir. 2022), *cert. granted*, 143 S. Ct. 2688 (2023)...................... 16

*John Doe Co. v. CFPB*,
849 F.3d 1129 (D.C. Cir. 2017) ........................................................... 17, 20

*Lucia v. SEC*,
138 S. Ct. 2044 (2018) .............................................................. 3, 4, 8, 20

*Monterey v. Del Monte Dunes at Monterey, Ltd.*,
526 U.S. 687 (1999) ................................................................................ 15

*NFIB v. OSHA*,
595 U.S. 109 (2022) ................................................................................ 19

*Nken v. Holder*,
556 U.S. 418 (2009) ............................................................................. 2, 19

*Parsons v. Bedford*,
28 U.S. (3 Pet.) 433 (1830) ................................................................... 15

*Pernell v. Southall Realty*,
416 U.S. 363 (1974) ................................................................................ 13

*Ryder v. United States*,
515 U.S. 177 (1995) ............................................................................. 3, 20

*SEC v. Lipson*,
278 F.3d 656 (7th Cir. 2002) .................................................................. 16

*Sierra Club v. Trump*,
963 F.3d 874 (9th Cir. 2020) .................................................................. 18

*Tull v. United States*,
481 U.S. 412 (1987) ..................................................................... 12, 13, 14

*U.S. v. Arthrex, Inc.*,
141 S. Ct. 1970 (2021) ................................................................. 4, 5, 6, 7

*U.S. v. Fausto*,
484 U.S. 439 (1988) ................................................................................ 10

*Winter v. NRDC, Inc.*,
   555 U.S. 7 (2008) ................................................................... 2, 19

*Youngstown Sheet & Tube Co. v. Sawyer*,
   343 U.S. 579 (1952) ........................................................... 17, 18

## Constitutional Provisions

U.S. CONST. art. II, § 2, cl. 2 ................................... 3, 7, 8, 9, 10

U.S. CONST. amend. VII........................................................... 12

## Statutes

5 U.S.C. § 551(1) ..................................................................... 9

5 U.S.C. § 3105.......................................................... 7, 8, 9, 10

5 U.S.C. § 5372........................................................................ 5

5 U.S.C. § 7521(a) ................................................................... 6

5 U.S.C. § 7521(b) ................................................................... 6

10 U.S.C. § 866(a) ................................................................... 9

15 U.S.C. § 2615(a) ............................................................... 13

15 U.S.C. § 2615(a)(2)(B) ...................................................... 13

49 U.S.C. § 323(a) ................................................................... 9

Pub. L. No. 89-554, 80 Stat. 378 (1966) .................................. 8

Pub. L. No. 95-251, 92 Stat. 183 (1978) .................................. 8

U.S. Code, Organic Laws, Decl. of Independence (1776) ......................................... 11

## Regulations

5 C.F.R. § 930.204(a)................................................................ 3

40 C.F.R. § 1.25(e)(1) .............................................................. 6

40 C.F.R. § 19.4 ..................................................................... 13

40 C.F.R. § 22.4(a)(1) .............................................................. 6

40 C.F.R. § 22.4(c)(1) .............................................................. 4

40 C.F.R. § 22.4(c)(2) .............................................................. 4

40 C.F.R. § 22.4(c)(3) .............................................................. 4

40 C.F.R. § 22.4(c)(5) .............................................................. 4

40 C.F.R. § 22.4(c)(6) .............................................................. 4

40 C.F.R. § 22.4(c)(10)............................................................ 4

40 C.F.R. § 22.21(a) ......................................................................... 5

40 C.F.R. § 22.27(a) ......................................................................... 4

40 C.F.R. § 22.27(c) ...................................................................... 4, 6

40 C.F.R. § 22.31(a) ......................................................................... 4

85 Fed. Reg. 31,172 (June 11, 2021) ............................................... 5

## Other Authorities

THE FEDERALIST NO. 83 ................................................................... 11

*OPM Senior Executive Service Desk Guide*, U.S. Office of Personnel
Mgmt. (2020), https://www.opm.gov/policy-data-oversight/senior-
executive-service/reference-materials/ses-desk-guide.pdf (last
visited Dec. 21, 2023) ............................................................... 10

Petitioners' Mtn. to Vacate and Remand in Light of Changed
Circumstances, *Biden v. Sierra Club*,
No. 20-138, 2021 WL 2458459 (U.S. June 11, 2021) ............................ 18

Whitehouse, Sheldon, *Restoring the Civil Jury's Role in the Structure of
Our Government*, 55 WM. & MARY L. REV. 1241 (2014) ...................... 11

## BACKGROUND & INTRODUCTION

Plaintiff Ro Cher Enterprises, Inc. is a small, family business that sells doors and windows, primarily from its showroom in Downers Grove, Illinois. *See* Verified Complaint (Compl.) ¶¶10–12. The company finds itself subject to an in-house administrative enforcement action. *In the Matter of Ro Cher Enter., Inc.*, EPA Dkt. No. TSCA-05-2023-0004 (*Ro Cher Matter*). EPA claims that Ro Cher violated the Toxic Substances Control Act (TSCA) by not having an EPA renovator certificate and by failing to provide seven homeowners with lead-hazard pamphlets. Compl. ¶¶ 18, 28; *id.* Ex. 1 (EPA Admin. Compl.) ¶¶ 72, 82. But Ro Cher is a retailer; it does not and did not perform renovations. Compl. ¶¶ 13–15. And EPA does not allege that lead or any "toxic substance" was mishandled. EPA nonetheless seeks an order—from itself, through its in-house action—imposing penalties against Ro Cher of up to $46,989 per violation per day. Compl. Ex. 1, EPA Admin. Compl. ¶¶ 34, 88.

EPA's in-house action is unlawful because the agency suffers from structural, separation-of-powers defects. *Axon Enter., Inc. v. FTC*, 598 U.S. 175, 191 (2023). EPA's proceeding thus inflicts upon Ro Cher "here-and-now" irreparable constitutional injuries. *Id.* As long as the proceeding continues, so does Ro Cher's harm. *Id.* at 192. And if EPA's proceeding concludes, Ro Cher's injury—being "subject[] to an unconstitutionally structured decisionmaking process"—would be complete. *Id.* At that point, Ro Cher's separation-of-powers injuries would be "impossible to remedy" since a "proceeding that has already happened cannot be undone." *Id.* at 191. Ro Cher therefore asks this Court to preliminarily enjoin EPA's in-house proceeding, so that Ro Cher can obtain judicial review of its constitutional claims before it's "too late." *Id.*

Ro Cher is likely to succeed on the merits of its structural, separation-of-powers claims. EPA's structural defect flows first from an Appointments Clause violation. Susan L. Biro, purportedly EPA's Chief Administrative Law Judge, was designated (by herself) to preside over the *Ro Cher Matter*, Compl. ¶ 49, but she was never validly appointed to the ALJ office. This structural defect deprives EPA of constitutional authority to proceed against Ro Cher "at all," *Axon*, 598 U.S. at 192. Separately, the *Ro Cher Matter* denies Ro Cher its Seventh Amendment right to a jury, another structural protection of Americans' liberty.

The equities favor Ro Cher. The public interest will be served by stopping EPA from continuing its in-house action because it is always in the public interest to prevent unlawful government action. Indeed, agencies may not act unlawfully, even for desirable ends. And EPA does not claim any present or ongoing harm to the public. Accordingly, this Court should enjoin the *Ro Cher Matter*.

## STANDARD OF REVIEW

A plaintiff is entitled to a preliminary injunction if it shows: (1) a likelihood of success on the merits; (2) a likelihood it will suffer irreparable harm in the absence of preliminary relief, *i.e.*, that remedies at law are inadequate; (3) the balance of equities tips in its favor; and (4) the injunction is in the public interest. *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008); *Ezell v. City of Chicago*, 651 F.3d 684, 694 (7th Cir. 2011). When the government is the defendant, the last two elements merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009).

## LAW & ARGUMENT

### I.   PLAINTIFF IS LIKELY TO SUCCEED ON ITS APPOINTMENTS CLAUSE CLAIM

The Appointments Clause "prescribes the exclusive means of appointing 'Officers'" of the United States. *Lucia v. SEC*, 138 S. Ct. 2044, 2051 (2018); *see also Freytag v. Comm'r*, 501 U.S. 868, 881 (1991). All officers must be appointed by Presidential nomination and Senate confirmation (PAS), unless Congress "by Law" vests the power to appoint "inferior" officers in the President alone, a head of department, or a court of law. U.S. CONST. art. II, § 2, cl. 2; *Edmond v. United States*, 520 U.S. 651, 660 (1997). Regulated parties are "entitled to a hearing before [] properly appointed" officials. *Ryder v. United States*, 515 U.S. 177, 188 (1995).

Here, Ms. Biro was not PAS appointed; no law vests anyone with the power to appoint EPA ALJs; and, even if such a law did exist, EPA ALJs are inadequately supervised by PAS officers. Therefore, Ms. Biro lacks the authority to preside over the *Ro Cher Matter*.

### A.   EPA ALJs are executive officers of the United States

An officer of the United States, as opposed to an employee, is a government official who holds a "continuing" office vested with "significant authority" under federal law. *Lucia*, 138 S. Ct. at 2051 (simplified). EPA ALJs have continuing positions pursuant to 5 C.F.R. § 930.204(a) ("career appointment"). And EPA ALJs wield "significant discretion when carrying out important functions" under federal law. *Lucia*, 138 S. Ct. at 2053 (cleaned up). Indeed, as the chart below shows, the powers of EPA ALJs are substantively indistinguishable from those of SEC ALJs at issue in *Lucia*:

| EPA ALJs | SEC ALJs |
|---|---|
| EPA ALJs "[c]onduct administrative hearings . . . ." 40 C.F.R. § 22.4(c)(1). | SEC ALJs may conduct trials. *Lucia*, 138 S. Ct. at 2053. |
| EPA ALJs "[a]dminister oaths and affirmations and take affidavits," *id*. § 22.4(c)(3), and "[r]ule upon motions, requests, and offers of proof, and issue all necessary orders," *id*. § 22.4(c)(2). | SEC ALJs "administer oaths, rule on motions, and generally regulate the course of a hearing, as well as the conduct of parties and counsel." *Id*. (cleaned up). |
| EPA ALJs may "[a]dmit or exclude evidence." *Id*. § 22.4(c)(6). | SEC ALJs may "rule on the admissibility of evidence." *Id*. |
| EPA ALJs may "[o]rder a party . . . to produce" discovery, and if the party fails without good cause, "draw adverse inferences . . . ." *Id*. § 22.4(c)(5). | SEC ALJs may "enforce compliance with discovery orders." *Id*. (citation omitted). |
| EPA ALJs "shall issue an initial decision" with "findings of fact, conclusions regarding all material issues of law or discretion," and a "recommended civil penalty assessment . . . ." *Id*. § 22.27(a). | SEC ALJs may "issue decisions containing factual findings, legal conclusions, and appropriate remedies." *Id*. (citation omitted). |
| EPA ALJs may "[d]o all other acts and take all measures necessary for the maintenance of order and for the efficient, fair and impartial adjudication of issues . . . ." *Id*. § 22.4(c)(10). | SEC ALJs have "the 'authority to do all things necessary and appropriate to discharge his or her duties' and ensure a 'fair and orderly' adversarial proceeding." *Id*. at 2049 (citations omitted). |
| If the Environmental Appeal Board does not review, an EPA ALJ's initial decision "shall become a final order 45 days after its service upon the parties," *id*. § 22.27(c), and EPA's "final Agency action," *id*. § 22.31(a). | If the SEC declines review, an SEC ALJ's initial decision "'becomes final' and is 'deemed the action of the Commission.'" *Id*. at 2054 (citations omitted). |

And, because EPA ALJs serve in the Executive Branch, they are *executive* officers of the United States. *U.S. v. Arthrex, Inc.*, 141 S. Ct. 1970, 1982 (2021).

**B.   Ms. Biro was not validly appointed as a principal officer**

The distinction between inferior and principal officers depends on "how much power an officer exercises free from control by a superior." *Arthrex*, 141 S. Ct. at 1982.

- 4 -

A principal officer, "in the context of [the Appointments] Clause," must be a Presidentially appointed and Senate-confirmed (PAS) officer. *Edmond*, 520 U.S. at 663. An inferior officer is one who is adequately controlled by a PAS officer. *Arthrex*, 141 S. Ct. at 1982. To distinguish between principal and inferior officers, courts apply "the governing test from *Edmond*," which turns on three factors: whether a PAS officer (1) exercises "administrative oversight" over the other officer, (2) has authority to remove the other officer without cause, and (3) "could review the [officer's] decisions." *Arthrex*, 141 S. Ct. at 1980, 1982 (simplified). Here, because EPA ALJs are *not* adequately controlled by any PAS officer, EPA ALJs are *principal* officers.

**First**, EPA ALJs are subject to only minimal administrative oversight by a PAS officer. In *Arthrex*, the Supreme Court considered whether administrative patent judges (APJs) in the U.S. Patent & Trademark Office were adequately controlled by a PAS officer. There, the PTO Director (a PAS officer) "fixed the rate of pay for APJs, controlled the decision whether to institute" adjudications and "selected the APJs" to conduct them, "promulgated regulations governing" adjudications, "issued prospective guidance on patentability issues, and designated past [agency] decisions as 'precedential' for future panels." 141 S. Ct. at 1980 (cleaned up). Here, EPA's Administrator (a PAS officer) has less administrative oversight than the PTO Director. *See, e.g.*, 5 U.S.C. § 5372 (ALJ pay fixed by statute, not by EPA Administrator); 85 Fed. Reg. 31,172, 31,175 (June 11, 2021) (repealing provision that had given Administrator some power to declare precedential decisions); 40 C.F.R. § 22.21(a) (Chief ALJ assigns ALJ for hearings). Accordingly, there is insufficient PAS-officer control over EPA

ALJs to make them inferior officers under the first *Edmond* factor.

**Second**, EPA ALJs are not removable at will. They may be removed only for good cause, which must be determined by the Merit Systems Protection Board. 5 U.S.C. § 7521(a). Good-cause findings (by the MSPB) are also required for certain suspensions, reductions in grade or pay, and even furloughs. *Id.* § 7521(b). This *Edmond* factor also supports the conclusion that EPA ALJs are principal officers.

**Finally**, and most importantly (*see Arthrex*, 141 S. Ct. at 1980), no PAS executive officer has the right to review ALJ decisions. Rather, if an ALJ's decision is administratively appealed, it is reviewed by the Environmental Appeals Board. 40 C.F.R. § 22.4(a)(1). But the members of this Board are not PAS officers. *See id.* § 1.25(e)(1) (noting that Board members are "designated" by the Administrator). And EPA's Administrator may not review anything unless the Board "in its discretion" permits such review. *Id.* § 22.4(a)(1). Critically, if an ALJ's decision is not appealed, it becomes the final decision of EPA and, thus, the Executive Branch. *Id.* § 22.27(c).

The EPA's structure in this respect mirrors the PTO's structure in *Arthrex*, in which the Supreme Court explained that the PTO Director "is the boss, *except* when it comes to *the one thing* that makes the APJs officers exercising 'significant authority' in the first place—their power to issue decisions on patentability." 141 S. Ct. at 1980 (emphasis added) (citation omitted). No PAS officer "within the Executive Branch 'directs and supervises' the work of APJs in that regard." *Id.* (cleaned up) (quoting *Edmond*, 520 U.S. at 663). Therefore, as in *Arthrex*, EPA ALJs "have the power to render a final decision on behalf of the United States" without review by

- 6 -

PAS officers. *Id*. at 1981 (simplified).

Accordingly, like the APJs in *Arthrex*, EPA ALJs are *principal* officers who must be PAS appointed. U.S. CONST. art. II, § 2, cl. 2. Because Ms. Biro was selected for her position by EPA's Administrator, Compl. ¶ 50, Ro Cher is likely to prevail on its Appointments Clause challenge, *id*. ¶¶ 82–97.

### C. EPA is structurally unconstitutional even if the EPA ALJ office is not a principal office

The government may argue that Ms. Biro was validly appointed as an inferior officer pursuant to 5 U.S.C. § 3105, which provides that "[e]ach agency shall appoint as many administrative law judges as are necessary for proceedings required to be conducted in accordance with sections 556 and 557 of this title." This argument fails for two reasons.

#### 1. EPA ALJs are insufficiently supervised

Assuming (for now) that § 3105 authorized EPA's Administrator to appoint Ms. Biro as an inferior officer, EPA remains structurally unconstitutional. As just explained, EPA ALJs "have the power to render a final decision on behalf of the United States" without review by PAS officers. *Arthrex*, 141 S. Ct. at 1981 (simplified). As *Arthrex* held, inferior officers are not permitted to issue final decisions on behalf of the Executive Branch without review by a PAS officer. *Id*. at 1980–82. *See* Exhibit 1 (Order, *Space Exploration Techs. Corp. v. Bell*, No. 1:23-cv-00137, slip op. at 3–5 (S.D. Tex. Nov. 8, 2023) (granting preliminary injunction)). Therefore, even if Ms. Biro was properly appointed as an inferior officer, EPA's structure still violates the Constitution's structure.

### 2.    Section 3015 does not vest appointment power

But, ultimately, EPA's Administer was not authorized to appoint Ms. Biro to office. A department head may appoint inferior officers only if Congress "by Law" so provided. U.S. CONST. art. II, § 2, cl. 2. Here, (a) statutory history, (b) statutory text, and (c) the canon of constitutional avoidance require that § 3105 not be read as vesting anyone with appointing power. Instead, § 3105 merely authorizes agencies to assign *already-appointed* ALJs to ALJ-office vacancies or hearings. As the Supreme Court said in a similar context, there is "no other way to interpret [§ 3105] that would make it consistent with the Constitution." *Edmond*, 520 U.S. at 658.

**a.** Section 3105 was enacted in 1966, *see* Pub. L. No. 89-554, 80 Stat. 378, 415, and non-substantively amended 12 years later, *see* Pub. L. No. 95-251, 92 Stat. 183 (1978) (changing "hearing examiners" to "administrative law judges"). Congress's actions thus came long before the Supreme Court first suggested that ALJs are officers subject to the Appointments Clause, *see Freytag*, 501 U.S. 868 (1991), and almost a half-century before the Court's 2018 *Lucia* decision firmly established that conclusion. Thus, when Congress enacted and amended § 3105, it all but certainly considered ALJs to be non-officer employees. *Cf. Edmond*, 520 U.S. at 654 (noting then-recent Supreme Court decisions cast doubt on the validity of past "assignments").

**b.** The text of § 3105 confirms this conclusion, as the alternative reading would violate the express terms of the Appointments Clause. That is, if Congress intended § 3105 to vest appointment power in every federal "agency," this power would be vested in "each authority of the Government of the United States, whether or not it

- 8 -

is within . . . another agency," including every agency and sub-agency within a department. 5 U.S.C. § 551(1) (defining "agency"). Under that interpretation, the power to appoint inferior officers would extend far beyond "the President alone, [] the Courts of Law, or [] the Heads of Departments." U.S. CONST. art. II, § 2, cl. 2. Congress could not have intended such a sweeping and obviously unconstitutional power, and § 3105 must not be interpreted that way.

    **c.** The Supreme Court's *Edmond* decision supports Ro Cher's reading. In *Edmond*, petitioners who were convicted by courts-martial challenged the authority of the Coast Guard Court of Criminal Appeals on the ground that two of its judges had been improperly appointed by the Secretary of Transportation. 520 U.S. at 655–56. There was no dispute that the Coast Guard court was part of the Transportation Department, or that a law (49 U.S.C. § 323(a)) authorized the Secretary to appoint officers. *Id*. at 656. But petitioners claimed that § 323(a) was merely a default statute and that a more specific law (10 U.S.C. § 866(a)) vested the appointment power exclusively in the military's Judge Advocates General (JAGs). *Id*. The Supreme Court rejected that interpretation. The Court explained that since JAGs were not the President, heads of department, or courts of law, Congress could not have vested JAGs with the power "to 'appoint' even inferior officers of the United States." *Id*. at 658. The challengers' interpretation "would [have] render[ed] [10 U.S.C. § 866(a)] clearly unconstitutional—which [the Court] must of course avoid doing if there is another reasonable interpretation available." *Id*. (citations omitted). The Court instead interpreted § 323(a) to authorize the Secretary—head of the department—to make those

appointments, consistent with the Appointments Clause. *Id*.

Interpreting § 3105 to vest an appointment power in all federal agencies would render it unconstitutional—an interpretation that must be avoided, particularly because a reasonable alternative exists. *Edmond*, 520 U.S. at 658. Section 3105 may be, and under the Appointments Clause must be, reasonably interpreted as providing the means for agencies to either assign *already-appointed* ALJs to individual matters or fill ALJ vacancies, while the Appointments Clause separately provides the "default manner of appointment for inferior officers"—PAS appointment. *Id*. at 660.

This two-step arrangement mirrors the assignment process for Senior Executive Service (SES) members, "high-level positions in the Executive Department, [] for whom" PAS appointment "is not required." *U.S. v. Fausto*, 484 U.S. 439, 441 n.1 (1988) (citation omitted). The Office of Personnel Management qualifies individuals for the SES,[1] after which they may be assigned to fill vacancies. Under both the § 3105 and SES arrangements, therefore, a separate authority first approves individuals for certain positions, and agencies then fill vacancies with the approved individuals.

### D.   Summing up: Ms. Biro was not validly appointed to office

The EPA ALJ office is a *principal* executive office. Therefore, individuals may not serve in that office unless they are Presidentially appointed and Senate confirmed. U.S. CONST. art. II, § 2, cl. 2. Because Ms. Biro was not so appointed to the

---

[1] *See OPM Senior Executive Service Desk Guide*, U.S. Office of Personnel Mgmt. 2-3 (2020), https://www.opm.gov/policy-data-oversight/senior-executive-service/reference-materials/ses-desk-guide.pdf (last visited Dec. 21, 2023).

ALJ office, she was not validly appointed. Alternatively, even if the EPA ALJ office is an inferior office *and* the Administrator is authorized to appoint ALJs, EPA's structure remains constitutionally defective due to the lack of PAS-officer oversight. Either way, Ro Cher is likely to succeed on its Appointments Clause claim.

## II. PLAINTIFF IS LIKELY TO SUCCEED ON ITS SEVENTH AMENDMENT CLAIM

EPA's in-house proceeding denies Ro Cher its constitutional right to a jury trial—another structural guarantee of Americans' liberty. *See* Sheldon Whitehouse, *Restoring the Civil Jury's Role in the Structure of Our Government*, 55 WM. & MARY L. REV. 1241, 1278 (2014) (quoting Justice Scalia's testimony to the Senate Judiciary Committee that the civil and criminal jury "absolutely is a structural guarantee of the Constitution"); *cf. also Blakely v. Washington*, 542 U.S. 296, 305–06 (2004) (The Sixth Amendment right to a jury trial "is no mere procedural formality, but a fundamental reservation of power in our constitutional structure. Just as suffrage ensures the people's ultimate control in the legislative and executive branches, jury trial is meant to ensure their control in the judiciary.") (citations omitted). One of the causes of the American Revolution was the Crown's "depriving us in many cases, of the benefits of Trial by Jury." U.S. Code, Organic Laws, Decl. of Independence (1776); *see also* THE FEDERALIST NO. 83 ("The objection to the plan of the [constitutional] convention, which has met with most success in this State, and perhaps in several of the other States, is that relative to the want of a constitutional provision for the trial by jury in civil cases.") (Hamilton). Without the promise of a Bill of Rights—perhaps especially without a guarantee for civil jury trials—the proposed constitution likely would not have been ratified. *Id.*

The Seventh Amendment provides: "In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved." U.S. CONST. amend. VII. Juries are required for all civil actions (over $20), including statutory actions, analogous to suits at common law. *Tull v. United States*, 481 U.S. 412, 417 (1987). To determine whether an action is so analogous, courts (A) "compare the statutory action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity," and (B) "determine whether [the remedy sought] is legal or equitable in nature." *Id*. at 417–18 (citations omitted). The remedy factor is the more important. *Id*. at 421 (citation omitted).

### A.  EPA alleges a legal, common law claim

EPA's action—like its action in *Tull*—is analogous to a common-law action in debt. *See id*., 481 U.S. at 418. There, EPA sought a civil penalty against Edward Tull based on the allegation that he violated the Clean Water Act by unlawfully dumping fill in wetlands. *Id*. at 414–15. The district court, without a jury, found that he had illegally filled wetlands and issued a $325,000 penalty. *Id*. at 415. The court of appeals affirmed, holding that Tull was not entitled to a jury. *Id*. at 416.

The Supreme Court reversed. It explained that a "civil penalty suit was," before the Seventh Amendment was adopted, "a particular species of an action in debt that was within the jurisdiction of the courts of law." *Tull*, 481 U.S. at 418 (citations omitted). And "[a]ctions by the Government to recover civil penalties under statutory provisions [] historically have been viewed as one type of action in debt requiring trial by jury." *Id*. at 418–19.

Here, EPA seeks to recover civil penalties under the statutory provisions of the TSCA. EPA's action, therefore, is a type of action in debt that requires trial by jury.

### B.   EPA seeks a legal remedy

"Remedies intended to punish culpable individuals, as opposed to those intended simply to extract compensation or restore the status quo, were issued by courts of law, not courts of equity." *Tull*, 481 U.S. at 422 (citations omitted). Indeed, a critical "characteristic of the remedy of civil penalties is that it exacts punishment— a kind of remedy available *only* in courts of law." *Id.* at 422 n.7 (emphasis added); *see Pernell v. Southall Realty,* 416 U.S. 363, 370 (1974) ("Where an action is simply for . . . the recovery of a money judgment, the action is one at law.") (cleaned up).

Here, the TSCA authorizes EPA to seek a civil penalty against Ro Cher of up to $46,989 per violation per day. Compl., Ex. 1, EPA Admin. Compl. ¶¶ 34, 88; *see* 15 U.S.C. § 2615(a); 40 C.F.R. § 19.4. The amount depends on "the nature, circumstances, extent, and gravity" of the violations. 15 U.S.C. § 2615(a)(2)(B). Therefore, EPA's requested remedy here is entirely legal; it seeks no equitable remedy.

### C.   *Atlas Roofing* does not alter the conclusion

Defendants will likely, but mistakenly, rely on *Atlas Roofing Co., Inc. v. Occupational Safety & Health Rev. Comm'n*, 430 U.S. 442 (1977). There, the Supreme Court held that Congress could, consistent with the Seventh Amendment, "assign" "public rights" cases to administrative forums "with which the jury would be incompatible." *Id.* at 450 (footnote omitted). Public rights cases were described as those "in which the Government sues in its sovereign capacity to enforce public rights created by statute" within Congress's lawful power. *Id.* To decide whether a jury trial could

be dispensed with, courts were to consider both the nature of the claim at issue and Congress's chosen forum. *Id*. at 460–61. This holding has been significantly narrowed, if not completely overruled, by later Supreme Court decisions.

First, the Supreme Court no longer gives Congress's chosen forum dispositive weight. Instead, as noted above, the Court considers the nature of the claim and the claim's remedy; if both are legal, especially if the remedy is legal, the case must be heard by a jury. *Tull*, 481 U.S. at 417–19. Thus, "'legal claims are not magically converted into equitable issues by their presentation to a court of equity,' . . . nor can Congress conjure away the Seventh Amendment by mandating that traditional legal claims be brought there or taken to an administrative tribunal." *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 52 (1989) (citation omitted). The author of the *Atlas Roofing* opinion acknowledged (but disagreed with) this post-*Atlas Roofing* analysis. *See id*. at 79–82 (White, J., dissenting).

Further, decisions both before and after *Atlas Roofing* contradict that opinion's reliance on the statutory basis of claims as a reason to disregard the Seventh Amendment. *See, e.g.*, *Curtis v. Loether*, 415 U.S. 189, 194 (1974) ("The Seventh Amendment does apply to actions enforcing statutory rights, and requires a jury trial upon demand, if the statute creates legal rights and remedies, enforceable in an action for damages in the ordinary courts of law."); *Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 348 (1998) (noting "many of our recent Seventh Amendment cases" (that required a jury) "involved modern statutory rights unknown to 18th-century England") (citations omitted).

Finally, while Justice White, in his *Granfinanciera* dissent, found some support for his view in then more-recent Supreme Court decisions, the Court's current emphasis on the *nature* of the claim at issue harkens back to the Court's original understanding. In 1830, Justice Story wrote for the Court that "[s]uits at common law" refers "not merely [to] suits, which the *common* law recognized among its old and settled proceedings, but [to] suits in which *legal* rights were to be ascertained and determined[.]" *Parsons v. Bedford*, 28 U.S. (3 Pet.) 433, 447 (1830).

EPA's case against Ro Cher is just such a case. The Defendants will no doubt claim that this is a "public rights" case on the ground that the Government has sued "in its sovereign capacity to enforce public rights created by [a] statute[]." *Atlas Roofing*, 439 U.S. at 450. Aside from the circularity and lack of definition of "public rights," the Supreme Court has since confirmed that the public rights doctrine does not allow Congress "to strip parties contesting matters of private right of their constitutional right to a trial by jury." *Granfinanciera*, 492 U.S. at 51–52. "[T]o hold otherwise would be to permit Congress to eviscerate the Seventh Amendment's guarantee by assigning to administrative agencies or courts of equity all causes of action not grounded in state law, whether they originate in a newly fashioned regulatory scheme or possess a long line of common-law forebears." *Id.* at 52 (discussing *Atlas Roofing*).

The nature of EPA's claims and remedies is legal. Thus, the claims would have been heard in common law courts when the Seventh Amendment was adopted. *See Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 709 (1999) (The Seventh Amendment applies to "statutory causes of action "'analogous to common-law causes

- 15 -

of action ordinarily decided in English law courts in the late 18th century, as opposed to those customarily heard by courts of equity or admiralty.""") (citations omitted).

*   *   *

EPA's action requires the determination of Ro Cher's private, legal rights, EPA seeks legal remedies, and therefore Ro Cher is entitled to a jury trial. Ro Cher is thus likely to succeed on its claim that EPA's administrative proceeding violates Ro Cher's Seventh Amendment right to a jury. Compl. ¶¶ 154–62. *See Burgess v. FDIC*, 639 F.Supp.3d 732, 747–50 (N.D. Tex. 2022) (granting preliminary injunction, based on Seventh Amendment claim, to enjoin FDIC from continuing administrative enforcement action); *SEC v. Lipson*, 278 F.3d 656, 662 (7th Cir. 2002) ("Because the SEC was seeking both legal and equitable relief, . . . Lipson was entitled to and received a jury trial.") (citations omitted); *Jarkesy v. SEC*, 34 F.4th 446, 451–59 (5th Cir. 2022) (SEC action violated Seventh Amendment), *pet. for rehearing en banc denied*, 51 F.4th 644 (5th Cir. 2022), *cert. granted*, 143 S. Ct. 2688 (2023).

### III. WITHOUT AN INJUNCTION, RO CHER WILL SUFFER IRREPARABLE HARM, BECAUSE RO CHER HAS NO ADEQUATE REMEDY AT LAW

As the Seventh Circuit has confirmed, when an alleged deprivation of a constitutional right is involved, no further showing of irreparable harm is required. *See Ezell,* 651 F.3d at 699 (reversing district court and finding irreparable harm for violation of Second Amendment, which like the First Amendment, protects "intangible and unquantifiable interests"); *see also Free the Nipple–Fort Collins v. City of Fort Collins*, 916 F.3d 792, 806 (10th Cir. 2019) ("[W]ell-settled law supports the constitutional-violation-as-irreparable-injury principle.") (citations omitted); *Burgess*, 639

F.Supp.3d at 749 (same regarding Seventh Amendment right). As then-Judge Kavanaugh explained, "[i]rreparable harm occurs almost by definition when a person or entity demonstrates a likelihood that it is being regulated on an ongoing basis by an unconstitutionally structured agency . . . ." *John Doe Co. v. CFPB*, 849 F.3d 1129, 1136 (D.C. Cir. 2017) (Kavanaugh, J., dissenting) (citations omitted).

Here, Ro Cher is being regulated—indeed, is subject to an in-house enforcement action—by an unconstitutionally structured agency. EPA is thus inflicting upon Ro Cher structural, separation-of-powers injuries. This "harm may sound a bit abstract; but th[e Supreme] Court has made clear that it is 'a here-and-now injury'" for which there is no legal remedy. *Axon*, 598 U.S. at 191 (quoting *Seila Law*, 140 S. Ct. at 2196). And the Supreme Court rejects the argument that a "separation-of-powers claim should be treated differently than every other constitutional claim." *Free Enter. Fund v. PCAOB*, 561 U.S. 477, 491 n.2 (2010).

Further, as the Supreme Court recently emphasized, Ro Cher's harm is "impossible to remedy once the [EPA's administrative] proceeding is over" because a "proceeding that has already happened cannot be undone," and "[j]udicial review of [Ro Cher's] structural constitutional claims would come too late to be meaningful." *Axon*, 598 U.S. at 191; *see also Cochran v. SEC*, 20 F.4th 194, 208 n.12 (5th Cir. 2022) (en banc), *aff'd sub nom. Axon*, 598 U.S. 175. Therefore, only injunctive relief—to prevent future harm—is available to Ro Cher.

And injunctions are proper in these kinds of cases. In *Youngstown Sheet & Tube Co. v. Sawyer*, for example, steel-mill owners challenged President Truman's

executive order seizing their mills on the ground that the order was not authorized by an act of Congress or any constitutional provision. 343 U.S. 579, 582–83 (1952). The Supreme Court rejected the government's argument that the President's unconstitutional order did not inflict irreparable harm and affirmed the district court's preliminary injunction. *Id.* at 584–85, 589; *see id.* at 660 (Burton, J., concurring) (The "President's order . . . invaded the jurisdiction of Congress [and] violated the essence of the principle of the separation of governmental powers. Accordingly, the injunction against its effectiveness should be sustained.").

Circuit courts, including the Seventh Circuit, have affirmed injunctions issued for separation-of-powers violations. *See City of Chicago v. Sessions*, 888 F.3d 272, 291 (7th Cir. 2018) (subsequent history concerning other issues omitted); *Sierra Club v. Trump*, 963 F.3d 874, 887, 895–97 (9th Cir. 2020) (affirming permanent injunction for violation of the Appropriations Clause, "'a bulwark of the Constitution's separation of powers'") (citation omitted).[2]

In the two cases underlying the Supreme Court's landmark decision in *Axon*, both the Fifth and Ninth Circuits had stayed administrative proceedings. *See* Exs. 2 (Order in *Axon Enters., Inc. v. FTC*, No. 20-15662 (9th Cir. Oct. 2, 2020)) & 3 (Order in *Cochran v. SEC*, No. 19-10396 (5th Cir. Sept. 24, 2019)). Since *Axon*, several courts have enjoined administrative proceedings to protect challengers' structural constitutional claims. *See* Ex. 4 (Order in *Morris & Dickson v. DEA*, No. 23-60284 (5th Cir.

---

[2] The Supreme Court vacated the Ninth Circuit's judgment on other grounds, 142 S. Ct. 46 (2021), because President Biden assured the Court that no tax-payer dollars would be diverted to the border wall, *see* Petitioners' Mtn. to Vacate and Remand in Light of Changed Circumstances, *Biden v. Sierra Club*, No. 20-138, 2021 WL 2458459 (U.S. June 11, 2021).

June 16, 2023)); *see also Alpine Secs. Corp. v. FINRA*, No. 23-5129, 2023 WL 4703307 (D.C. Cir. July 5, 2023); *Burgess*, 639 F.Supp.3d 732. This Court, too, has issued an injunction in similar circumstances. *See City of Evanston v. Barr*, 412 F.Supp.3d 873, 886–87 (N.D. Ill. 2019) (permanent injunction for violating Separation of Powers).

### IV. THE BALANCE OF THE EQUITIES FAVORS AN INJUNCTION

A party seeking a preliminary injunction must demonstrate "that the balance of equities tips in [its] favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20. "These factors merge when the Government is the opposing party." *Nken*, 556 U.S. at 435. And these factors support Ro Cher's request for an injunction.

First, the government "does not have an interest" in enforcing an arrangement "that is likely constitutionally infirm." *Chamber of Commerce v. Edmondson*, 594 F.3d 742, 771 (10th Cir. 2010). Instead, "the public interest will perforce be served by enjoining" these "invalid" arrangements. *Id.* (simplified). The Supreme Court has held that when an agency exceeds its authority, the court should not "weigh . . . tradeoffs" between its intended effect and harms. *NFIB v. OSHA*, 595 U.S. 109, 120 (2022).

"[O]ur system does not permit agencies to act unlawfully even in pursuit of desirable ends." *Ala. Ass'n of Realtors v. HHS*, 141 S. Ct. 2485, 2490 (2021) (citation omitted). "When a law is likely unconstitutional, the interests of those the government represents, such as voters, do not outweigh a plaintiff's interest in having its constitutional rights protected." *Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1145 (10th Cir. 2013) (cleaned up), *aff'd sub nom.*, *Burwell v. Hobby Lobby Stores, Inc.*, 134 S. Ct. 2751 (2014).

In any event, EPA cannot show any injury to the public here. Ro Cher's alleged TSCA violations occurred in the past, and EPA does not allege that Ro Cher mishandled any toxic substances or that Ro Cher's (alleged) conduct causes ongoing harms.

Finally, only an injunction will allow Ro Cher to pursue its constitutional challenges before it's "too late" to obtain "meaningful" judicial relief. *Axon*, 598 U.S. at 191.[3] Allowing Ro Cher to pursue its constitutional claims would, in turn, further the Supreme Court's marked interest in "creating 'incentives'" for parties "'to raise'" structural constitutional challenges. *Lucia*, 138 S. Ct. at 2055 n.5 (cleaned up) (quoting *Ryder*, 515 U.S. at 183).

In short, as then–Judge Kavanaugh stated, "[t]he public interest is not served by letting an unconstitutionally structured agency continue to operate until the constitutional flaw is fixed. And in this circumstance, the equities favor the people whose liberties are being infringed, not the unconstitutionally structured agency." *John Doe*, 849 F.3d at 1137 (Kavanaugh, J., dissenting).

## CONCLUSION

For the foregoing reasons, Plaintiff Ro Cher respectfully requests a preliminary injunction enjoining EPA's administrative enforcement proceeding. *In the Matter of Ro Cher Enter., Inc.*, EPA Dkt. No. TSCA-05-2023-0004.

---

[3] In the *Ro Cher Matter*, Ro Cher's motion to stay, pending this litigation, was treated as a request for an extension and granted in part. The matter thus remains open.

DATED: December 22, 2023.

Respectfully submitted,

 s/ Oliver J. Dunford
OLIVER J. DUNFORD
Pacific Legal Foundation
4440 PGA Boulevard, Suite 307
Palm Beach Gardens, FL 33410
916.503.9060
odunford@pacificlegal.org
N.D. Ill. Bar No. 1017791

MOLLY E. NIXON
Pacific Legal Foundation
3100 Clarendon Boulevard, Suite 1000
Arlington, VA 22201
202.888.6881
mnixon@pacificlegal.org
New York Bar No. 5023940*

*Admitted Pro Hac Vice*

*Attorneys for Plaintiff*
*Ro Cher Enterprises, Inc.*