**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

---

| | | |
|---|---|---|
| RO CHER ENTERPRISES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:23-cv-16056 |
| U.S. ENVIRONMENTAL PROTECTION | ) | |
| AGENCY, MICHAEL S. REGAN, in his | ) | |
| official capacity as EPA Administrator; | ) | |
| DEBRA SHORE, in her official capacity as | ) | |
| Regional Administrator of EPA Region 5; and | ) | |
| MICHAEL D. HARRIS, in his official capacity | ) | |
| as Director of the Enforcement and Compliance | ) | |
| Assurance Division of EPA Region 5, | ) | |
| | ) | |
| Defendants. | ) | |

---

**MEMORANDUM IN OPPOSITION TO PLAINTIFF'S**
**MOTION FOR PRELIMINARY INJUNCTION**

**Table of Contents**

TABLE OF AUTHORITIES .................................................................................................... iii

INTRODUCTION ................................................................................................................... 1

BACKGROUND ...................................................................................................................... 1

    A.    Statutory and Regulatory Background. ....................................................................... 1

        1.    TSCA's Lead-Based Paint Rules ....................................................................... 1

        2.    EPA's Enforcement Authority under TSCA. ................................................... 2

        3.    EPA and the Use of ALJs to Conduct Formal Adjudication. ...................... 3

    B.    Factual Background and Procedural History. ............................................................ 5

STANDARD FOR DECISION ............................................................................................... 6

ARGUMENT .......................................................................................................................... 6

I.    Plaintiff Is Not Likely to Succeed on the Merits. ............................................................ 7

    A.    ALJ Biro Was Properly Appointed as an Inferior Officer. ..................................... 7

        1.    Administrative Law Judge Biro Is Not a Principal Officer. ........................ 7

        2.    ALJ Biro Constitutionally Serves as an Inferior Officer. ........................... 12

    B.    Administrative Adjudication of Public Rights under TSCA Is Appropriate. ............... 14

        1.    An Agency Adjudication Does Not Violate Article III or the Seventh Amendment If It Involves Public Rights. ................................................................................... 15

        2.    EPA Proceedings under TSCA Involve Public Rights ................................. 15

II.    Plaintiffs Have Not Shown Irreparable Harm Absent an Injunction. ................................. 19

III.    The Balance of Equities and the Public Interest Weigh Against an Injunction ................... 20

CONCLUSION ...................................................................................................................... 20

# TABLE OF AUTHORITIES

**U.S. CONSTITUTION**

U.S. Const., Art. 2, § 2, cl. 2 ..................................................................................7

**CASES**

*Ambassador Animal Hosp., Ltd. v. Elanco Animal Health Inc.*,
   74 F.4th 829 (7th Cir. 2023),
   *petition for cert. filed* (No. 23-552) (Nov. 22, 2023)................................13

*Atlas Roofing Co. v. Occupational Safety & Review Comm'n*,
   430 U.S. 442 (1977)................................................................14, 15, 16, 18

*Bandimere v. SEC*,
   844 F.3d 1168 (10th Cir. 2016) ...........................................................10, 13

*Benisek v. Lamone*,
   138 S. Ct. 1942 (2018).................................................................................6

*Bevis v. City of Naperville, Ill.*,
   85 F.4th 1175 (7th Cir. 2023) ......................................................................6

*Buckley v. Valeo*,
   424 U.S. 1 (1976)..........................................................................................7

*Carr v. Saul*,
   141 S. Ct. 1352 (2021)...........................................................................13, 14

*CFTC v. Schor*,
   478 U.S. 833 (1986).....................................................................................18

*Crowell v. Benson*,
   285 U.S. 22 (1932).......................................................................................18

*Decker Coal Co. v. Pehringer*,
   8 F.4th 1123 (9th Cir. 2021) .............................................................10, 11, 12

*Edmond v. United States*,
   520 U.S. 651 (1997)........................................................7, 8, 9, 11, 13

*Firestone Tire & Rubber Co. v. Risjord*,
   449 U.S. 368 (1981).............................................................................19, 20

*Fleming v. United States Dep't of Agric.*,
   987 F.3d 1093 (D.C. Cir. 2021) .................................................................10

*Freytag v. Comm'r,*
   501 U.S. 868 (1991) ........................................................................................12

*Geldermann, Inc. v. Commodity Futures Trading Comm'n,*
   836 F.2d 310 (7th Cir. 1987) ..........................................................................15

*Granfinanciera, S.A.* v. *Nordberg,*
   492 U.S. 33 (1989)..........................................................................15, 16, 17

*Heggestad v. U.S. DOJ,*
   182 F. Supp. 2d 1 (D.D.C. 2000) ................................................................9, 11

*Hepner v. United States,*
   213 U.S. 103 (1909)........................................................................................14

*In re AMVAC Chem. Corp.,*
   18 E.A.D. 769 (EAB Sep. 28, 2022).................................................................8

*In re: Atkinson Developers, LLC & Frank M. Atkinson, Jr.,*
   CWA Appeal No. 16-03 (unpublished order, Sept. 20, 2016)..........................8

*In Re Peace Indus. Grp.,*
   CAA No. 16-01, 17 E.A.D. 348 (EAB Dec. 22, 2016) ..................................8, 9

*Island Creek Coal Co. v. Bryan,*
   937 F.3d 738 (6th Cir. 2019) ....................................................................12, 13

*Jarkesy v. SEC,*
   34 F.4th 446 (5th Cir. 2022)
   *cert. granted*, 143 S. Ct. 2688 (June 30, 2023) (No. 22-859)...............10, 15

*Jones Bros., Inc. v. Sec'y of Labor,*
   898 F.3d 669 (6th Cir. 2018) ..........................................................................10

*K & R Contractors, LLC v. Keene,*
   86 F.4th 135 (4th Cir. 2023) ......................................................................10, 12

*Kaufmann v. Kijakazi,*
   32 F.4th 843 (9th Cir. 2022) ...........................................................................10

*Lucia v. SEC,*
   138 S. Ct. 2044 (2018)......................................................................................7

*Morrison v. Olson,*
   487 U.S. 654 (1988)........................................................................................10

*Murray's Lessee v. Hoboken Land & Improvement Co.*,
    59 U.S. 272 (1855) ........................................................................................................16, 18

*Nken v. Holder*,
    556 U.S. 418 (2009) ........................................................................................................6, 20

*N. Arapaho Tribe v. Harnsberger*,
    697 F.3d 1272 (10th Cir. 2012) ...........................................................................................18

*Oceanic Nav. Co. v. Stranahan*,
    214 U.S. 320 (1909) ..............................................................................................................14

*Oil States Energy Services v. Greene's Energy Group*,
    138 S. Ct. 1365 (2018) ..........................................................................................................15

*Passavant v. United States*,
    148 U.S. 214 (1893) ..............................................................................................................14

*Renegotiation Bd. v. Bannercraft Clothing Co.*,
    415 U.S. 1 (1974) ..................................................................................................................19

*Rosenthal & Co. v. Bagley*,
    581 F.2d 1258, 1261 (7th Cir. 1978) ...................................................................................14

*Stern v. Marshall*,
    564 U.S. 462 (2011) .................................................................................................15, 16, 18

*Thomas v. Union Carbide Agric. Products Co.*,
    473 U.S. 564 (1985) ..............................................................................................................18

*Tull* v. *United States*,
    481 U.S. 412 (1987) ..............................................................................................................16

*United States v. Arthrex, Inc.*,
    141 S. Ct. 1970 (2021) ...........................................................................................8, 9, 10, 11

*United States v. Perkins*,
    116 U.S. 483 (1886) ..............................................................................................................10

*Vidiksis v. E.P.A.*,
    612 F.3d 1150 (11th Cir. 2010) ...........................................................................................18

*Winter v. NRDC*,
    555 U.S. 7 (2008) ..............................................................................................................6, 19

**STATUTES**

5 U.S.C. § 551 et seq................................................................................3, 4

5 U.S.C. § 553................................................................................................12

5 U.S.C. § 554-57..........................................................................................12

5 U.S.C. § 556................................................................................................12

5 U.S.C. § 556(b)(3)......................................................................................12

5 U.S.C. § 557................................................................................................12

5 U.S.C. §§ 701-06........................................................................................12

5 U.S.C. § 901-912..........................................................................................3

5 U.S.C § 3105...................................................................................3, 12, 13

5 U.S.C § 3395(a)(2)(A)................................................................................11

5 U.S.C. § 7521(a).........................................................................................10

15 U.S.C. § 2615(a)(l)......................................................................................2

15 U.S.C. § 2615(a)(2)(A)...............................................................................2

15 U.S.C. § 2615(a)(3)......................................................................................3

15 U.S.C. § 2686..............................................................................................2

15 U.S.C. § 2686(b)..........................................................................................2

Pub. L. No. 79-404, 60 Stat. 237, 244 (1946)...............................................3

Pub. L. No. 98–532, 98 Stat 2705 (1984).......................................................3

Pub. L. No. 102-550, 106 Stat. 3672 (1992)..................................................1

**CODE OF FEDERAL REGULATIONS**

5 C.F.R. §§ 317.901-04.................................................................................11

40 C.F.R. § 1.25(e)(2)...............................................................................4, 11

40 C.F.R. Pt. 22 ...........................................................................................................4, 7

40 C.F.R. § 22.1(a)(6) ........................................................................................................8

40 C.F.R. § 22.3(a) .........................................................................................................3, 8

40 C.F.R. § 22.4(a) ............................................................................................................5

40 C.F.R. § 22.4(a)(1) ........................................................................................................8

40 C.F.R. § 22.27(c) ......................................................................................................3, 8

40 C.F.R. § 22.27(c)(4) ......................................................................................................8

40 C.F.R. § 22.27(d) ......................................................................................................4, 8

40 C.F.R. § 22.30(b) ..........................................................................................................8

40 C.F.R. § 22.30(f) .......................................................................................................4, 9

40 C.F.R. § 22.32 ...............................................................................................................8

40 C.F.R. Part 745, Subpart E ...........................................................................................2

40 C.F.R. § 745.84(a).........................................................................................................2

40 C.F.R § 745.89(b) .........................................................................................................5

**FEDERAL REGISTER**

Reorg. Plan No. 3 of 1970, 5 U.S.C. App. 1, 35 Fed. Reg. 15623 (Oct. 6, 1970) ...........3

45 Fed. Reg. 24360 (Apr. 9, 1980) ................................................................................3, 4

57 Fed. Reg. 5320 (Feb. 13, 1992) ....................................................................................4

63 Fed. Reg. 29908 (June 1, 1998) ....................................................................................2

73 Fed. Reg. 21692 (Apr. 22, 2008) ..................................................................................2

82 Fed. Reg. 2230 (Jan. 9, 2017) .......................................................................................7

86 Fed. Reg. 31172 (June 11, 2021) .......................................................................4, 8, 9, 11

**LEGISLATIVE HISTORY**

S. Rep. No. 79-752, at 1, 5 (1945), reprinted in *Administrative Procedure Act Legislative History*, at 187, 191 (Comm. Print 1946) .................................................................12

## INTRODUCTION

Although facially Plaintiff Ro Cher challenges only the ability of EPA Administrative Law Judge ("ALJ") Susan Biro to adjudicate a single administrative penalty assessment against it under the Toxic Substances Control Act ("TSCA"), its theory of the case would upend decades of Supreme Court and Seventh Circuit precedent. Under Ro Cher's view of the law, every ALJ must be directly appointed by the President and confirmed by the Senate, a position no court has ever adopted. Ro Cher goes even further, arguing that the ALJ administrative proceeding is also invalid because it deprives Ro Cher of an alleged right to a trial by jury. This position is contrary to decades of Supreme Court and circuit precedent. Given the complete lack of supporting case law, Plaintiff is not likely to succeed on the merits. Moreover, Ro Cher's jury trial arguments are contrary to the express mandate by Congress that TSCA penalty actions may only be brought administratively. If Ro Cher's position were adopted, TSCA would lack an enforcement penalty mechanism, stripping TSCA of its deterrent effect and leaving children and others vulnerable to lead poisoning. Ensuring that an effective deterrent remains in place tips the equities decidedly in EPA's favor. A preliminary injunction is contrary to the public interest and should be denied.

## BACKGROUND

### A.    Statutory and Regulatory Background.

#### 1.    TSCA's Lead-Based Paint Rules

In 1992, Congress enacted the Residential Lead-Based Paint Hazard Reduction Act, and created Title IV of TSCA, after finding that: (1) low-level lead poisoning was widespread among American children; (2) pre-1980 American housing stock contained more than three million tons of lead in the form of lead-based paint; and (3) the ingestion of lead from deteriorated or abraded lead-based paint was the most common cause of lead poisoning in children. Residential Lead-Based Paint Hazard Reduction Act of 1992, Pub. L. No. 102-550, 106 Stat. 3672 (codified in portions of Titles 12, 15, and 42 of the U.S. Code). Title IV of TSCA requires the EPA

1

Administrator to promulgate regulations requiring each person who performs for compensation a renovation of target housing to provide a lead hazard information pamphlet to the owner and occupant of such housing prior to commencing the renovation. 15 U.S.C. § 2686(b).

In 1998, pursuant to its authority in TSCA section 406, 15 U.S.C. § 2686, EPA promulgated regulations at 40 C.F.R. Part 745, Subpart E, *Residential Property Renovation. See* Lead; Requirements for Hazard Education Before Renovation of Target Housing, 63 Fed. Reg. 29908, 29919 (June 1, 1998). In 2008, EPA amended and re-codified those residential property renovation regulations (the "RRP Rule"), to prescribe procedures and requirements for the accreditation of training programs, certification of individuals and firms engaged in lead-based paint activities, and work practice standards for renovation, repair, and painting activities in target housing and child-occupied facilities. *See* Lead; Renovation, Repair, and Painting Program, 73 Fed. Reg. 21692 (Apr. 22, 2008).

The regulatory provision giving rise to this case, 40 C.F.R. § 745.84(a), requires the firm performing the renovation in target housing to provide notification about lead hazards. The firm must: (1) provide the owner or occupant with the pamphlet titled *Renovate Right: Important Lead Hazard Information for Families, Child Care Providers and Schools* 60 days before beginning; and (2) obtain from the owner or occupant a written acknowledgement of receipt of the pamphlet or obtain a certification of mailing at least seven days prior to the renovation.

### 2. EPA's Enforcement Authority under TSCA.

TSCA section 16 authorizes EPA to seek civil penalties for statutory violations, including for failure to comply with the RRP Rule. *See* 15 U.S.C. § 2615(a)(1); *see also id*. § 2689. TSCA section 16 provides that the Administrator may assess civil penalties "by an order made on the record after opportunity ... for a hearing .... " *Id.* § 2615(a)(2)(A).

An ALJ's initial decision assessing penalties can become final in two ways: either upon

issuance of "[a]n order … by the Environmental Appeals Board or the Administrator after an appeal," or 45 days after service if no appeal is filed and the Environmental Appeals Board does not initiate *sua sponte* review. *See* 40 C.F.R. § 22.3(a); 40 C.F.R. § 22.27(c). TSCA section 16(a)(3) provides for judicial review of a final administrative order assessing civil penalties in the U.S. Court of Appeals for the D.C. Circuit or in another U.S. Court of Appeals in a Circuit in which the person aggrieved resides or transacts business. 15 U.S.C. § 2615(a)(3).

### 3. EPA and the Use of ALJs to Conduct Formal Adjudication.

EPA was established pursuant to the Reorganization Act, specifically in Executive Reorganization Plan No. 3 of 1970. 5 U.S.C. §§ 901-912; Reorg. Plan No. 3 of 1970, 5 U.S.C. App. 1, 35 Fed. Reg. 15623 (Oct. 6, 1970).[1] Section 1(b) identifies the Administrator as the agency head and specifies that the Administrator shall be appointed by the President, by and with the advice and consent of the Senate. *See* Reorg. Plan No. 3 of 1970 § 1(b). Section 3 authorizes the Administrator to take action to perform EPA's statutory functions. *Id.* at § 3. Included among the functions are enforcement actions and adjudications.

Congressional enactment of the Administrative Procedure Act ("APA"), 5 U.S.C. § 551 *et seq.*, in 1946 provided that "there shall be appointed by and for each agency as many qualified and competent examiners" (now called ALJs), "as may be necessary." Pub. L. No. 79-404, 60 Stat. 237, 244 (now codified at 5 U.S.C. § 3105). By the time EPA was created, the Administrator already had authority to rely on "examiners," now-called ALJs, to conduct administrative adjudications.

The Administrator promulgated regulations for the conduct of adjudications for, among

---

[1] Congress ratified and affirmed as law each reorganization plan implemented under the Reorganization Act prior to October 19, 1984, including Executive Reorganization No. 3 of 1970. Pub. L. No. 98–532, 98 Stat 2705 (1984).

other things, assessment of administrative penalties. *See* Consolidated Rules of Practice Governing the Administrative Assessment of Civil Penalties and the Revocation or Suspension of Permits ("CROP"), 45 Fed. Reg. 24360 (Apr. 9, 1980) (codified as amended at 40 C.F.R. Pt. 22). The regulations require exhaustion of administrative remedies, including appeal to EPA's Environmental Appeals Board ("EAB"), prior to judicial appeal. 40 C.F.R. § 22.27(d). The EAB is authorized to adopt, modify, or set aside the findings of fact and conclusions of law or discretion contained in the initial decision being reviewed. 40 C.F.R. § 22.30(f). **EPA's Office of Administrative Law Judges ("OALJ") currently houses three ALJs who conduct formal adjudications for EPA.** *See EPA's Administrative Law Judges*, https://www.epa.gov/aboutepa/about-office-administrative-law-judges-oalj (last visited Jan. 29, 2024). ALJ Biro was appointed as Chief ALJ by former EPA Administrator Carol Browner on May 23, 1997. https://www.epa.gov/aboutepa/epas-administrative-law-judges#biro

In a 1992 regulation, the Administrator established the EAB as EPA's administrative appellate body, the purpose of "which is to hear and decide appeals in cases that were formerly either delegated to the Judicial Officers or decided on the basis of the Judicial Officers' recommendations." *See Changes to Regulations to Reflect the Role of the New Environmental Appeals Board in Agency Adjudications*, 57 Fed. Reg. 5320 (Feb. 13, 1992).

The EAB's authority is derived from that of the Administrator, as "each judge acts on the express delegated authority of the Administrator and remains accountable to the Administrator." 86 Fed. Reg. 31172, 31175 (June 11, 2021); 40 C.F.R. § 1.25(e)(2). Furthermore, the EAB is not independent of the Administrator. *See* 86 Fed. Reg. at 31,174-75 (EAB is independent "from the various component offices *outside the immediate Office of the Administrator*") (emphasis added). Thus, the EAB reports to the Administrator in operating under his delegated authority.

One of the goals of the EAB is "to relieve the Administrator of the responsibility for responding to appeals," and thus reduce the likelihood that parties would petition the Administrator directly. *Id*. at 5321. The EAB was instead expressly authorized to refer any case or motion to the Administrator with the Administrator having the ultimate authority to issue final determinations. 40 C.F.R. § 22.4(a).

### B.     Factual Background and Procedural History.

Ro Cher advertises itself as a vendor and installer of doors and windows. In 2018, a former Ro Cher employee filed a citizen complaint with EPA alleging Ro Cher's failure to comply with TSCA and the RRP Rule. After investigating Ro Cher's TSCA compliance status, EPA issued an administrative subpoena to Ro Cher, to which Ro Cher responded. Based on a review of the information provided by Ro Cher, EPA filed an administrative Complaint.

The Complaint alleges that, on at least seven different occasions between May 30, 2018, and December 2, 2020, Ro Cher entered into contracts with homeowners to replace windows in single-family, pre-1978 residential housing. *See* Complaint and Notice of Opportunity for Hearing ¶ 48, EPA Docket No. TSCA-05-2023-0004[2] (Apr. 21, 2023).

At each of the properties, documentary information demonstrated that Ro Cher acted as the general contractor, charged the property owners money for windows and installation services, and made arrangements with an installation subcontractor. *Id*. ¶ 49. According to EPA's TSCA certification records, during this time, Ro Cher was not certified as required under 40 C.F.R § 745.89(b). *Id*. ¶ 72. EPA's Administrative Complaint alleges that, for each of the renovations, Ro Cher failed to provide each homeowner with the lead hazard pamphlet and failed either to obtain from the homeowner a written acknowledgment that the owner had received the pamphlet,

---

[2] EAB's administrative docket: https://www.epa.gov/eab (follow "EAB Dockets").

or to obtain a certificate of mailing at least seven days prior to the renovation. *Id*. ¶ 81.

On June 29, 2023, Roger Janakus, Ro Cher's owner and representative, filed a response to the Complaint with EPA Region 5 in Chicago, which referred the matter to OALJ, which in turn designated Chief ALJ Biro to preside over the matter. On November 20, 2023, Ro Cher filed a motion to stay the administrative proceedings, in part, to allow for settlement negotiations. *Id*. at Dkt. Entry No. 14. On December 4, 2023, ALJ Biro granted a 90-day extension of all deadlines in the administrative proceeding. *Id*. at Dkt. Entry No. 17.

Ro Cher filed its Complaint in this case on November 16, 2023, Dkt. No. 1, and the instant Motion for Preliminary Injunction and accompanying Memorandum in Support ("Mot.") on December 22, 2023, Dkt. No. 14.

## STANDARD FOR DECISION

A preliminary injunction is "an extraordinary remedy never awarded as of right." *Benisek v. Lamone*, 138 S. Ct. 1942, 1943-44 (2018) (quoting *Winter v. NRDC*, 555 U.S. 7, 24 (2008)). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20. It is "not enough that the chance of success on the merits be 'better than negligible' … [nor] is simply showing of some 'possibility of irreparable injury.'" *Nken v. Holder*, 556 U.S. 418, 434 (2009). Finally, in evaluating claims that a statute violates the Constitution, courts generally presume that the legislative body was aware of constitutional limitations and endeavored to follow them. *Bevis v. City of Naperville, Ill.*, 85 F.4th 1175, 1188 (7th Cir. 2023).

## ARGUMENT

The Court should deny Plaintiff's Motion for a Preliminary Injunction because Plaintiff cannot show a likelihood of success on the merits, nor can Plaintiff establish the other factors.

I.       **Plaintiff Is Not Likely to Succeed on the Merits.**

      A.       **ALJ Biro Was Properly Appointed as an Inferior Officer.**

Ro Cher argues that ALJ Biro may not adjudicate the administrative claims against it because: (1) ALJ Biro is a principal officer that has not been properly appointed, Mot. at 5, and (2) even if ALJ Biro is an inferior officer, Congress has not authorized the Administrator to appoint ALJs as inferior officers, Mot. at 7. Ro Cher is unlikely to prevail on these arguments.

      1.       **Administrative Law Judge Biro Is Not a Principal Officer.**

The Appointments Clause requires Presidential appointment and confirmation by the Senate for "principal" officers, such as ambassadors and Supreme Court Justices, but Congress may entrust appointment of "inferior" officers to the President, the judiciary, or agency heads. U.S. Const., Art. 2, § 2, cl. 2; *see also*, *e.g.*, *Buckley v. Valeo*, 424 U.S. 1, 132 (1976). ALJ Biro is an inferior—not principal—officer. Whether an officer is "an 'inferior' officer depends on whether [she has] a superior" other than the President.[3] *Edmond v. United States*, 520 U.S. 651, 662-63 (1997). *Edmond* explained that "inferior officers are officers 'whose work is directed and supervised at some level by others who were appointed by Presidential nomination with the advice and consent of the Senate.'" *Id*. Direction and supervision can be manifested through a number of mechanisms, including general oversight of the officer's authority and duties, review of the officer's decisions, and removal of the officer from office. *Id*. at 664–65. At EPA, the Administrator exercises these aspects of direction and supervision over EPA ALJs.

The Administrator exercises general control over ALJs by prescribing rules of procedure for all the agency's adjudications. *See CROP*, 40 C.F.R. Pt. 22.[4] The Supreme Court has

---

[3] In *Lucia v. SEC*, 138 S. Ct. 2044 (2018), the Court addressed whether ALJs are officers or employees, *id.* at 2051, not the distinction between principal and inferior officers, *id*. at n.3.
[4] The EPA Administrator retains statutory discretion to revise the Part 22 rules as appropriate and has so revised the regulations in the past. *See, e.g*., 82 Fed. Reg. 2230 (Jan. 9, 2017) (revising CROP regulations).

repeatedly emphasized that the authority to promulgate such "uniform rules of procedure" for subordinates to follow can render those subordinates "inferior officers." *Edmond*, 520 U.S. at 664; *accord United States v. Arthrex*, 141 S. Ct. 1970, at 1980 (noting this power of "administrative oversight"). And more fundamentally, ALJs do not have any independent authority to conduct adjudications. An ALJ's authority flows from delegations by the Administrator and ALJ decisions are subject to further administrative appeal to, or sua sponte review by, the EAB, which itself is subject to the Administrator's control). *See* 40 C.F.R. §§ 22.1(a)(6), 22.3(a), and 22.27(c). Moreover, the fact that the EAB has overruled ALJ decisions illustrates that it conducts meaningful review or supervision of ALJ decisions. *See, e.g., In re AMVAC Chem. Corp.*, 18 E.A.D. 769, 772 (EAB Sep. 28, 2022) (remanding FIFRA matter after finding "the ALJ misconstrued and misapplied" relevant statutory standard); *In re Peace Indus. Group*, 17 E.A.D. 348, 350 (EAB Dec. 22, 2016) (exercising *sua sponte* review authority and finding "the ALJ failed to ensure that this substantial penalty was consistent with the 'record . . . '").

An EPA ALJ's initial decision becomes final only if no party seeks appeal to the EAB, 40 C.F.R. § 22.27(d), *and* if the EAB declines to take sua sponte review, 40 C.F.R. § 22.27(c)(4). *See also In Re Peace Indus. Grp*, CAA No. 16-01, 17 E.A.D. 348 (2016) (granting sua sponte review); *In re: Atkinson Developers, LLC & Frank M. Atkinson, Jr.*, CWA Appeal No. 16-03 (unpublished, Sept. 20, 2016) (same) (Ex. 2); 40 C.F.R. § 22.30(b). Although regulations explain that the Administrator will not consider *direct* motions (other than for disqualification), and instead provide for Administrator consideration by referral by and through the EAB, 40 C.F.R. §§ 22.4(a)(1), 22.32, an EPA Administrator may nonetheless initiate his own review of an ALJ

decision or direct the EAB to so refer a matter.[5] *See* 86 Fed. Reg. at 31172 ("the Administrator reaffirms that the Board is intended to function as an impartial body that is independent of all EPA components, *except* the immediate Office of the Administrator") (emphasis added); s*ee also Heggestad v. U.S. DOJ*, 182 F. Supp. 2d 1, 9 (D.D.C. 2000) ("[I]t is well established that the head of an agency retains the authority to make final decisions for the agency even if [they] delegate[] the authority to make these decisions to [their] subordinates.").Unlike the statute at issue in *Arthrex*, the CROP regulations define how the EAB may act in the Administrator's shoes, but the regulations do not divest the Administrator of underlying statutory authority to direct or take action. Furthermore, the Administrator retains the authority previously delegated to the Board and may withdraw that delegated authority at any time. *See id*.

Ro Cher's comparison between EPA ALJs and administrative patent judges ("APJs") serving at the Patent and Trademark Office ("PTO"), whose service was recently determined to be incompatible with the Appointments Clause in *United States v. Arthrex, Inc*., 141 S. Ct. at 1985, is unavailing. Examining *Edmond*, the *Arthrex* Court considered it "significant" in identifying an inferior officer that the official would "have no power to render a final decision on behalf of the United States unless permitted to do so by other Executive officers," which is precisely the case with EPA ALJs here. *Arthrex*, 141 S. Ct. at 1980 (examining *Edmond*, 520 U.S. at 665). Unlike the scheme in *Arthrex*, the Administrator retains all authority to take final action on behalf of EPA. And, the EAB, acting on authority delegated from the Administrator, can review any ALJ decision *de novo*, 40 C.F.R. § 22.30(f). Unlike *Arthrex*, there is here no

---

[5] Ro Cher is simply wrong in its assertion that the "EPA's Administrator may not review anything unless the Board 'in its discretion' permits such review." Mot. at 6. The regulation it cites refers to how the Board may, in its discretion, refer matters to the Administrator and does not constrain the *Administrator*'s authority to review a matter even absent such referral. No regulation constrains that authority.

statutory bar that might constrain the Administrator's authority over any administrative adjudication.

In sum, because the Administrator retains ultimate authority over the EPA's final decision, the "chain of command" is clear and preserves supervisory accountability, unlike the "diffusion of accountability" that concerned the Court in *Arthrex*. 141 S. Ct. at 1981.

At least six circuit courts have considered whether ALJs and other similar administrative adjudicators (outside of the unusual *Arthrex* scheme) are inferior officers, and each has held in the affirmative. *See Bandimere v. SEC*, 844 F.3d 1168, 1179 (10th Cir. 2016) ("SEC ALJs are inferior officers under the Appointments Clause."); *see also Fleming v. United States Dep't of Agric.*, 987 F.3d 1093, 1103 (D.C. Cir. 2021); *Decker Coal Co. v. Pehringer*, 8 F.4th 1123, 1135–36 (9th Cir. 2021); *K & R Contractors, LLC v. Keene*, 86 F.4th 135, 144 (4th Cir. 2023); *Jones Bros., Inc. v. Sec'y of Labor*, 898 F.3d 669, 679 (6th Cir. 2018); *Jarkesy v. SEC,* 34 F.4th 446, 464 (5th Cir. 2022), *cert. granted*, 143 S. Ct. 2688 (June 30, 2023) (No. 22-859). Plaintiff cites no case holding that an ALJ is a principal officer.

Ro Cher argues that ALJs must be principal officers because they can be removed by the Administrator only "for good cause." 5 U.S.C. § 7521(a). But the Supreme Court has consistently held that inferior officers like military cadets, *United States v. Perkins*, 116 U.S. 483 (1886), and the independent counsel, *Morrison v. Olson*, 487 U.S. 654 (1988), can have for-cause removal restrictions. Ro Cher fails to meaningfully distinguish those controlling precedents or explain why EPA's ALJs (who perform more limited duties than a military officer or an independent counsel) must be considered principal officers. In any event, even if the removal restriction were held unconstitutional, the appropriate remedy would be to sever the restriction, *Kaufmann v. Kijakazi*, 32 F.4th 843, 849 (9th Cir. 2022); *Decker Coal*, 8 F.4th at

10

1136, not to hold that the officer had been improperly appointed.

Ro Cher mistakenly contends that under *Arthrex* the Administrator may not choose to adopt a regulatory scheme for reviewing (or limiting review of) a subordinate's decision. *Arthrex* held the contrary: the Court distinguished *statutory* bars on a principal officer's ability to review a subordinate's decision from other cases where, pursuant to a regulation, a "superior executive officer can review or *implement a system for reviewing*" a subordinate's. *Arthrex*, 141 S. Ct. at 1984 (emphasis added). The latter is clearly permissible, as is the case with EPA's rules, which permit and facilitate review of ALJ decisions.

Moreover, ALJ decisions are reviewed by EAB judges who have been appointed by the Administrator. *See* Ex. 1 (EAB Commissions). The EAB is not independent of the Administrator but rather "remains accountable to the Administrator." 86 Fed. Reg. at 31175; 40 C.F.R. § 1.25(e)(2). In this role, the Board stands in the shoes of the Administrator, from whom the Board has been delegated authority. *See* 86 Fed. Reg. at 31175 ("[E]ach judge acts on the express delegated authority of the Administrator . . . ."). Furthermore, it is a fundamental precept of delegations that the delegating official, here the Administrator, retains the right to exercise or withdraw the delegated authority at any time. *See Heggestad,* 182 F. Supp. 2d at 9–10. And the Administrator can remove the EAB judges from their "judicial assignment without cause." *Compare Edmond*, 520 U.S. at 664. The EPA Administrator has either appointed or ratified the prior appointment of each EAB Judge, thus satisfying the Appointments Clause requirement for appointment by an agency head. EAB Judges are members of the Senior Executive Service ("SES") and, as a result, the Administrator can re-assign them to other positions without cause with advance notice pursuant to the SES regulations. *See* 5 U.S.C § 3395(a)(2)(A); 5 C.F.R. §§ 317.901-04. Because the Administrator, either himself or through the EAB, has oversight and

11

the ability to review decisions of ALJ Biro, she is not a principal officer.

### 2. ALJ Biro Constitutionally Serves as an Inferior Officer.

The position in which ALJ Biro serves is "established by law," specifically the ALJ statute. 5 U.S.C. § 3105. The statute specifies the duties, salary, and means of appointment for the ALJ office. *Compare Freytag v. Comm'r*, 501 U.S. 868, 881 (1991) (citations omitted) (identifying factors to be considered in determining when an inferior officer position is "established by law"). Consistent with her continuing duties, ALJ Biro was appointed by the Administrator, the Head of a Department, as that term is used in the Appointments Clause.

Congress "established by law" the process for ALJ appointment, and Judge Biro's appointment complies with that law. The ALJ statute at 5 U.S.C. § 3105 directs each agency to appoint as many ALJs as are necessary for proceedings required to be conducted in accordance with the formal adjudication provisions of 5 U.S.C. §§ 556 and 557. That Congress vested ALJ appointment authority government-wide, rather than agency-by-agency, is unsurprising. Congress had spent a decade considering proposals and sought to enact legislation that would deal with types or categories of functions across the government, and not by singling out "administrative agencies by name." S. Rep. No. 79-752, at 1, 5 (1945), reprinted in *Administrative Procedure Act Legislative History*, at 187, 191 (Comm. Print 1946). Congress did so, for example, for rulemaking proceedings, 5 U.S.C. § 553, and judicial review, which apply across agencies governmentwide, *id.* §§ 701-06. The APA specifies procedures for formal adjudications, *id.* §§ 554-57, including the use of ALJs in § 556(b)(3).

Following the Supreme Court decision in *Lucia*, the courts of appeals that have addressed the Appointments Clause issue have uniformly concluded that ALJs can be properly appointed as inferior officers by department heads under 5 U.S.C. § 3105. *See, e.g.*, *K & R Contractors, LLC v. Keene*, 86 F.4th at 143-44; *Decker Coal*, 8 F.4th at 1127 n.1; *Island Creek Coal Co. v. Bryan*,

937 F.3d 738, 753 (6th Cir. 2019); *Bandimere*, 844 F.3d at 1179. With no case law to support their argument that 5 U.S.C. § 3105 does not grant agency heads authority to appoint inferior officers, Ro Cher argues that because Congress enacted this statute prior to Supreme Court cases clarifying whether ALJs are officers or employees, Congress "all but certainly considered ALJs to be non-officer employees." Mot. at 8. Rather than ask the Court to speculate what Congress may have thought, the Court should start "with the plain language of the statute." *Ambassador Animal Hosp., Ltd. v. Elanco Animal Health Inc*., 74 F.4th 829, 831 (7th Cir. 2023), *petition for cert. filed* (No. 23-552) (Nov. 22, 2023). When Congress specified that each agency "shall appoint as many administrative law judges as are necessary," 5 U.S.C. § 3105, the statutory construction that makes sense is that agency heads (such as the Administrator) are authorized to appoint ALJs.

Finally, Ro Cher invokes constitutional avoidance in arguing that the ALJ statute should not be read as vesting in agency heads the power to appoint inferior officers. Mot. at 8. To the contrary, the avoidance canon counsels in favor of reading § 3105 as providing for a constitutional appointment. As *Edmond* explained, when plaintiffs argue that a court should "interpret [a statute] in a manner that would render it clearly unconstitutional" under the Appointments Clause, the court "must" adopt any "reasonable interpretation available" that would permit a constitutional appointment. 520 U.S. at 658.

Construing 5 U.S.C. § 3105 as sufficient statutory authority for the EPA Administrator to appoint ALJs—who were subsequently determined to be inferior officers—avoids Ro Cher's claim of constitutional error. This reading is consistent with how the Supreme Court has understood "agency" in the Appointments Clause context, and it avoids creating unnecessary uncertainty about the constitutionality of ALJ Biro's appointment. *See Carr v. Saul*, 141 S. Ct.

1352, 1357 (2021) (prior to ratification, "SSA ALJs had been selected by lower level staff rather than appointed by the head of the agency"). Ro Cher is not likely to prevail on the merits of the Appointments Clause claim.

> **B.** **Administrative Adjudication of Public Rights under TSCA Is Appropriate.**

Ro Cher separately argues that EPA's threatened administrative assessment of civil penalties violates the Seventh Amendment right to a jury because the statutory claims brought against Ro Cher for violations of TSCA and the remedies sought involve private, legal rights. Plaintiff is asking the Court to issue a decision that is contrary to over a century of Supreme Court precedent. As the Seventh Circuit stated more than 40 years ago, "Congress' power to commit statutorily created claims to administrative agencies for initial determination has repeatedly been recognized." *Rosenthal & Co. v. Bagley*, 581 F.2d 1258, 1261 (7th Cir. 1978) (citing *Atlas Roofing Co. v. Occupational Safety & Review Comm'n*, 430 U.S. 442, 453 (1977)).

Since before the 1900s, Congress has authorized federal agencies charged with enforcing statutes designed to protect the public to conduct adjudications to find facts and to impose remedies. *See Passavant v. United States*, 148 U.S. 214, 220 (1893) (reiterating the authority of Congress to delegate to administrative officers final and conclusive authority as to the valuation of imported merchandise, accompanied with the power to impose a penalty). More than a century ago, the Supreme Court found that the validity of such statutes was well settled. *Oceanic Nav. Co. v. Stranahan*, 214 U.S. 320, (1909); *Hepner v. United States*, 213 U.S. 103 (1909). More recently in *Atlas Roofing Co.*, a unanimous Supreme Court reaffirmed that Congress does not run afoul of the Seventh Amendment when it authorizes administrative agencies to adjudicate civil penalties pursuant to an otherwise valid statute. Unlike the cases cited by the Plaintiff, *Atlas Roofing* is the relevant case for this court to look to, and in that case the Court held that Congress may assign an administrative agency the authority to adjudicate the statutory rights it creates.

14

*Atlas Roofing* has not been overruled, and it is dispositive of the jury trial issue in this case.[6]

### 1. An Agency Adjudication Does Not Violate Article III or the Seventh Amendment If It Involves Public Rights.

Supreme Court and Seventh Circuit precedent establish that, "when Congress properly assigns a matter to adjudication in a non-Article III tribunal, 'the Seventh Amendment poses no independent bar to the adjudication of that action by a nonjury factfinder." *Oil States Energy Services v. Greene's Energy Group,* 138 S. Ct. 1365, 1379 (2018) (quoting *Granfinanciera, S.A.* v. *Nordberg*, 492 U.S. 33, 53-54 (1989)); *Atlas Roofing*, 430 U.S. at 453; *see also Geldermann, Inc. v. CFTC*, 836 F.2d 310, 323–24 (7th Cir. 1987) ("In a non-Article III forum the Seventh Amendment simply does not apply."). In determining whether statutes authorizing federal agencies to adjudicate claims conflict with Article III, the Supreme Court has relied on the public-rights doctrine. The doctrine recognizes the authority of Congress to create "new statutory obligations," impose "civil penalties for their violation," and then commit "to an administrative agency the function of deciding whether a violation has in fact occurred." *Atlas Roofing*, 430 U.S. at 450. The Constitution's separation of powers is not offended by adjudication of public rights outside the judiciary because, when Congress creates new rights (such as through a novel, comprehensive regulatory scheme), it has broad latitude to grant jurisdiction to federal courts or assign adjudication in another branch. *Atlas Roofing,* 430 U.S. at 457; *see also Oil States,* 138 S. Ct. at 1373-74.

### 2. EPA Proceedings under TSCA Involve Public Rights

Article III prevents Congress from "withdraw[ing] from judicial cognizance any matter which, from its nature, is the subject of a suit at the common law, or in equity, or admiralty."

---

[6] The Supreme Court is currently considering whether statutory provisions that empower the SEC to initiate and adjudicate administrative enforcement proceedings seeking civil penalties violate the Seventh Amendment. *SEC v. Jarkesy*, No. 22-859 (argued Nov. 29, 2023).

*Stern v. Marshall*, 564 U.S. 462, 484 (2011) (quoting *Murray's Lessee v. Hoboken Land*, 59 U.S. 272, 284 (1855)). But when Congress creates a new public right by statute—particularly one that the government enforces as sovereign—"it depends upon the will of Congress whether a remedy in the courts shall be allowed at all," so "Congress may set the terms of adjudicating" that right. *Stern*, 564 U.S. at 489 (citation omitted). When doing so, "Congress could 'impose appropriate obligations and sanction their enforcement by reasonable money penalties, giving to executive officers the power to enforce such penalties without the necessity of invoking the judicial power.'" *Atlas Roofing,* 430 U.S. at 457 (quoting *Oceanic Navigation,* 214 U.S. at 339).

Plaintiff ignores this precedent and instead argues that the Supreme Court has effectively overturned or narrowed *Atlas Roofing* in *Tull* v. *United States*, 481 U.S. 412 (1987), and *Granfinanciera*. Mot. at 14. Contrary to plaintiff's argument, both cases reaffirmed the long-standing principle that Congress does not run afoul of the Seventh Amendment when it authorizes administrative agencies to adjudicate civil penalties when the government seeks to enforce a statutory claim pursuant to an otherwise valid statute. The *Tull* analysis regarding when the Seventh Amendment guarantees a right to a jury trial is limited to "suits" brought in federal district court, not administrative adjudication. Instead of overturning or narrowing *Atlas Roofing,* the Court unequivocally stated that "the Seventh Amendment is not applicable to administrative proceedings," citing *Atlas Roofing*. *Tull*, 481 U.S. at 418 n.4.

Plaintiff's reliance on *Granfinanciera* is similarly misplaced. First, the Court acknowledged that the Seventh Amendment does not prohibit Congress from assigning resolution of a statutory claim that is *legal* in nature to a non-Article III tribunal that does not use a jury as a factfinder, so long as the claim asserts a 'public right.' *Granfinanciera,* 492 U.S. 33, 53. Second, the Court was careful to distinguish litigation between private parties from claims

brought by the Government in its sovereign capacity and clarified that the test established in *Granfinanciera* was never intended to be applied to the latter under federal regulatory schemes. *Id.*, at 51-54. The TSCA right is a public right. Because this case involves an agency adjudication brought by the United States to enforce a statutory claim designed to protect the public, the analysis in *Granfinanciera* has no bearing.

Even if the reasoning in *Granfinanciera* were applicable to an action brought by the United States, TSCA is not an example of Congress stripping away a party's right to a civil jury trial for claims that existed at common law, or claims that could have been brought in District Court. Instead, it is exactly the type of "newly fashioned regulatory scheme" designed to protect the public that the Court envisioned as being appropriate for agency adjudication. *Id.* at 51. When Congress adopted TSCA Title IV, it imposed new statutory obligations on regulated parties to protect the public against the hazard of lead-based paint. At common law, home renovators were not obliged to provide a lead-hazard information pamphlet to the owner and occupant. Lead hazards were not widely known at that time. Congress recognized this when it enacted the Residential Lead-Based Paint Hazard Reduction Act of 1992. In creating the public right, it authorized the United States to seek civil penalties exclusively in EPA administrative proceedings to enforce statutory violations. Congress thus created the public right for homeowners and occupants to receive the lead-hazard information pamphlet because there were no adequate remedies at common law, which is the foundation of the public-rights doctrine.

Plaintiff ignores precedent to argue that the administrative hearing will deprive Ro Cher of what it characterizes as private rights by imposing "restrictions on lawful businesses and . . . monetary penalties," Compl. ¶ 40. To the contrary, the administrative hearing will adjudicate whether Plaintiff violated statutorily created obligations regarding lead-based paint. Plaintiff's

argument conflates the enforcement mechanism chosen by Congress—civil penalties—with the right at issue, namely, the public right to have knowledge about potential lead-based paint exposure.

Indeed, it is difficult to imagine a statute that better sets forth a *public* right that may be adjudicated in administrative agencies than the lead-based paint exposure reduction provisions of TSCA. *Cf. N. Arapaho Tribe v. Harnsberger*, 697 F.3d 1272, 1280 (10th Cir. 2012) ("[T]his is not a 'public rights' case seeking to vindicate broadly applicable public rights, such as . . . administrative compliance with environmental protection statutes and regulations."). First, a cause of action to enforce the right to have disclosure of the risks of lead-based paint "can be pursued only by the grace of the other branches," i.e., such a right created by Congress did not exist at common law. *Stern*, 564 U.S. at 493 (citing *Murrays's Lessee*, 59 U.S. at 284). Second, the right of homeowners to know the dangers of lead-based paint "flow[s] from a federal statutory scheme," i.e. TSCA. *Id*. (citing *Thomas v. Union Carbide Agric. Products Co.*, 473 U.S. 564, 584-85 (1985); *Atlas Roofing*, 430 U.S. at 458, and *CFTC v. Schor*, 478 U.S. 833, 856 (1986)). Third, the right to be apprised of the potential dangers of lead-based paint is limited to a "particularized area of law," and Congress designated the EPA as the "expert and inexpensive method for dealing with a class of questions of fact which are particularly suited to examination and determination by an administrative agency specially assigned to that task." *Id*. (citing *Crowell v. Benson*, 285 U.S. 22, 46 (1932), *Thomas*, 473 U.S. at 584, and *Schor*, 478 U.S. at 855-56). Indeed, the federal courts have upheld administrative assessment of penalties under the very same lead-based paint rules. *Vidiksis v. E.P.A.*, 612 F.3d 1150 (11th Cir. 2010).

TSCA therefore falls within the heart of the Supreme Court's public-rights decisions, and EPA adjudications violate neither Article III nor the Seventh Amendment.

**II.     Plaintiffs Have Not Shown Irreparable Harm Absent an Injunction.**

Although this Court need not look at any other of the preliminary injunction factors once concluding that Plaintiff is not likely to succeed on the merits, Plaintiff has also not shown "that irreparable injury is *likely* in the absence of an injunction." *Winter*, 555 U.S at 22. First, Plaintiff incorrectly reads *Axon* as support for its argument that being subjected to an EPA adjudication is an irreparable injury for the purposes of a preliminary injunction. The narrow question decided by *Axon* is whether the respondents were properly in court at all; it did not address a preliminary injunction. *Axon* confirms that Ro Cher has alleged an injury for federal question jurisdiction, but it does not follow that Ro Cher has established irreparable harm for a preliminary injunction.

Here, Plaintiff must do more than allege that being subject to an EPA adjudication constitutes an irreparable injury. Plaintiff fails to demonstrate that the administrative hearing is likely to end prior to this Court reaching a decision on the merits. A hearing date has not been set for the administrative adjudication and on December 4, 2023, ALJ Biro granted an extension of deadlines for *settlement negotiations*, extending the Plaintiff's deadline to file a prehearing exchange until April 22, 2024, with EPA's rebuttal due by May 15, 2024. A hearing date will not even be scheduled until after these submittals are filed and the parties are given the opportunity to file motions seeking an accelerated decision. After invoking the ALJ's authority to extend deadlines to accommodate settlement discussions, and failing to demonstrate that an emergency injunction is required or else its rights will be irreparably harmed, Ro Cher has failed to establish that merely being subjected to the ALJ's authority amounts to irreparable harm.

Second, litigation expense does not constitute an irreparable injury. *See Renegotiation Bd. v. Bannercraft Clothing Co.*, 415 U.S. 1, 24 (1974) ("Mere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury."); *see also Firestone Tire & Rubber Co. v. Risjord,* 449 U.S. 368, 379 n.13 (1981) (irreparable harm must be "greater

than the harm suffered by any litigant forced to wait until the termination of the [proceedings]").

As Plaintiffs have failed to point to any harm other than being subject to an EPA adjudication and failed to demonstrate that the administrative hearing might end before this Court can resolve their claims on the merits, Plaintiffs have failed to demonstrate a likelihood of irreparable harm.

## III.    The Balance of Equities and the Public Interest Weigh Against an Injunction

After assessing the merits of Plaintiff's claims, the Court must balance the harm to each party. When the party opposing a stay is the United States, the public interest element tends to "merge" with the United States' interest. *See Nken v. Holder*, 556 U.S. at 435.

In the absence of a program to protect children from lead poisoning from occurring in the first place, Congress enacted TSCA's Lead-Based Paint Hazard Reduction Act. Issuing an injunction that impedes EPA's ability to fulfill this Congressional directive will undermine a statutory provision designed to protect children from lead poisoning. While Ro Cher argues that "EPA cannot show any injury to the public here [because it] does not allege that Ro Cher mishandled any toxic substances," Mot. at 20, the purpose behind the pamphlet requirement is to ensure that homeowners, who otherwise might not be aware of the dangers of lead-based paint, are fully aware and able to recognize and take appropriate action when safety precautions are not being followed. Indeed, the entire purpose of the regulatory requirement is prophylactic. Ro Cher's alleged interest in not being subject to an EPA adjudication is not superior to the United States' interest, and the public interest, in protecting children and others from getting lead poisoning in the first place. Therefore, the balancing of equities and the public interest do not support the issuance of a preliminary injunction.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiff's motion for a preliminary injunction.

Dated: January 29, 2024

Of Counsel:

ELIZABETH HUSTON
STEPHEN SWEENEY
Environmental Protection Agency
Office of General Counsel
1200 Pennsylvania Ave NW
Washington, DC 20460

Respectfully submitted

TODD KIM
Assistant Attorney General
Environment & Natural Resources Division

*s/ Phillip R. Dupré*
PHILLIP R. DUPRÉ
TX Bar No. 24069650
Environmental Defense Section
P.O. Box 7611
Ben Franklin Station
Washington, D.C. 20044
Tel. (202) 616-7501
phillip.r.dupre@usdoj.gov

*Counsel for Defendants*