IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RO CHER ENTERPRISES, INC., <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, et al., <br><br> Defendants. | CASE NO. 1:23-CV-16056 <br><br><br> JUDGE STEVEN C. SEEGER <br> MAGISTRATE JUDGE HEATHER K. MCSHAIN |

REPLY IN SUPPORT OF
PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

OLIVER J. DUNFORD
N.D. Ill. Bar No. 1017791
Pacific Legal Foundation
4440 PGA Boulevard, Suite 307
Palm Beach Gardens, FL 33410
916.503.9060
odunford@pacificlegal.org

MOLLY E. NIXON
N.Y. Bar No. 5023940*
Pacific Legal Foundation
3100 Clarendon Boulevard, Suite 1000
Arlington, VA 22201
202.888.6881
mnixon@pacificlegal.org
      *Admitted Pro Hac Vice

*Attorneys for Plaintiff*
*Ro Cher Enterprises, Inc.*

### INTRODUCTION

The Court should issue a temporary injunction. Ro Cher is likely to prevail on its claims that EPA is unconstitutionally structured due to Appointments Clause and Seventh Amendment violations. And EPA does not claim that Ro Cher's (alleged) conduct threatens harm to the public or to EPA itself. Finally, because Ro Cher has suffered and continues to suffer an irreparable harm, the equities favor stopping that harm before EPA's in-house proceeding ends—at which point Ro Cher's constitutional challenges could never be vindicated.

### I. PLAINTIFF IS LIKELY TO SUCCEED ON ITS APPOINTMENTS CLAUSE CLAIM BECAUSE EPA'S ADMINISTRATOR LACKS REQUISITE CONTROL OVER ALJS

The question here is whether EPA is unconstitutionally structured because its ALJs, without having been properly appointed to a principal office, may issue a final decision that binds EPA and the Executive Branch. EPA acknowledges that this question turns on the nature and extent of the Administrator's supervision over ALJs. *See* Opp. 7 (discussing *Edmond v. United States*, 520 U.S. 651 (1997)). And EPA does not dispute the critical points of the analysis: (1) final agency decisions must be made by principal officers; (2) ALJs are officers who have the power to issue final EPA decisions; (3) ALJs were not appointed as principal officers (*i.e.*, by the President with Senate confirmation); and (4) the Administrator may remove ALJs from office only for cause. Accordingly, the Administrator lacks the relevant necessary control over ALJs, and EPA is unconstitutionally structured. *See* Pl. Br. 3–11.

This structural deficiency exists even if, as EPA argues (Opp. 12–14), its ALJs are inferior officers. That is, EPA is unconstitutionally structured because ALJs are

*either* (a) principal officers who were not properly appointed *or* (b) inferior officers who unlawfully exercise principal-officer powers. *See United States v. Arthrex, Inc.*, 141 S. Ct. 1970, 1985 (2021). "[B]oth formulations describe the same constitutional violation: Only an officer properly appointed to a principal office may issue a final decision binding the Executive Branch . . . ." *Id*.

EPA's responses fail under scrutiny. EPA argues that the Administrator has sufficient control because: he is charged with enforcement and adjudication; ALJs and the Environmental Appeals Board may act only through his delegations; and he retains the power to "initiate his own review of an ALJ decision or direct the EAB to so refer a matter." Opp. 3–5, 8–9. EPA further says the Administrator exercises "general" control over ALJs by prescribing regulations for agency adjudications. *Id*. 7. But it is through these very regulations that the Administrator ceded the relevant control. According to the rules prescribed by the Administrator, ALJs conduct administrative hearings and issue "initial" decisions. 40 C.F.R. §§ 22.4(c)(1), 22.27(a). The Administrator is precluded from reviewing these decisions unless the Environmental Appeals Board, at the *Board's* discretion, refers one to him. *Id*. § 22.4(a)(1). Without the Board's referral, an ALJ's decision may become EPA's final decision. *Id*. § 22.27(c); *see* Pl. Br. at 4. Thus, the Administrator has delegated to ALJs the authority to issue final agency decisions without principal-officer review.

EPA still claims, however, that no regulation "divest[s]" or "constrains" the Administrator's purported authority to intervene and review individual ALJ decisions. Opp. 9 & n.5. To the contrary, the Administrator "has limited his discretion by

promulgating the regulation[s] . . . ." *Samirah v. Holder*, 627 F.3d 652, 663 (7th Cir. 2010). Having chosen to seek a monetary penalty through an in-house adjudication, the Administrator is "bound by the regulations which he himself ha[s] promulgated for dealing with such cases." *Vitarelli v. Seaton*, 359 U.S. 535, 540 (1959); *cf. also Ballard v. C.I.R.*, 544 U.S. 40, 59 (2005) ("The Tax Court, like all other decisionmaking tribunals, is obliged to follow its own Rules.") (citing *Service v. Dulles*, 354 U.S. 363, 388 (1957); *Vitarelli*, 359 U.S. at 540). Of course, the Administrator *may* amend EPA's regulations so that he has the final word on all ALJ decisions. Opp. 7 n.4, 9. "But he has not done so. So long as th[e] regulation[s] remain[] in force the Executive Branch is bound" by them. *United States v. Nixon*, 418 U.S. 683, 696 (1974).[1]

Therefore, as it stands, EPA ALJs "have the 'power to render a final decision on behalf of the United States' without" review by a "principal officer in the Executive Branch." *Arthrex*, 141 S. Ct. at 1981 (quoting *Edmond*, 520 U.S. at 665). The restrictions on the Administrator's review "relieve [him] of responsibility for the final decisions rendered by [ALJs] purportedly under his charge." *Id*. "In all the ways that matter to the parties who appear before [the EPA's ALJs], the buck stops with the

---

[1] EPA cites a non-binding district court case involving the government's claim of deliberative process privilege in response to a FOIA request. *See Heggestad v. DOJ*, 182 F.Supp.2d 1 (D.D.C. 2000). That privilege protects from disclosure documents created before an agency's final decision, *id*. at 7, and the court had to decide which government official made the (final) decision to prosecute certain individuals. This kind of intra-government wrangling has nothing to do with procedural regulations that apply to private parties. *See Samirah*, 627 F.3d at 664 ("[R]ules promulgated by a federal agency, which regulate the rights and interests of others, are controlling upon the agency."); *Morton v. Ruiz*, 415 U.S. 199, 235 (1974) ("Where the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures[,] . . . even where the internal procedures are possibly more rigorous than otherwise would be required.") (citing *Service*, 354 U.S. at 388; *Vitarelli*, 359 U.S. at 539–40).

[ALJs], not with the [Administrator]." *Id.* at 1982. The ALJs "accordingly exercise power that conflicts with the design of the Appointments Clause 'to preserve political accountability.'" *Id.* (quoting *Edmond*, 520 U.S. at 663). The Administrator's lack of requisite control thus renders EPA structurally unconstitutional.

\* \* \*

EPA's remaining arguments are easily dealt with. First, that the Environmental Review Board may review, and has reversed, ALJ decisions (Opp. 8) is irrelevant. Members of the Board are (EPA does not dispute) inferior officers, and the Appointments Clause requires supervision and control by principal officers. Relatedly, EPA's claim that the Board stands in the Administrator's shoes (*id.* 11) is not wrong as far as it goes. But, as noted above, the Administrator himself gave the Board the sole discretion to refer (or not) ALJ decisions to the Administrator for review.[2]

Second, EPA attempts to discount the constraints the Administrator imposed on himself by arguing that *Arthrex* turned on statutory, as opposed to regulatory, restrictions on a principal officer's review power. Opp. 11. But *Arthrex* never suggested that regulatory restrictions on such review would be treated differently. Indeed, *Arthrex* itself cited a regulation as an example of an agency's establishing proper principal-officer control. *See id.*, 161 S. Ct. at 1984 (citing 8 C.F.R. § 1003.0(a)). Regardless, as explained above, both the Supreme Court and the Seventh Circuit

---

[2] EPA emphasizes that the EAB was created, and is maintained, to ensure fairness and independent decision-making. *See, e.g.*, 86 Fed. Reg. 31172 (June 11, 2021). The Administrator does not (outside of this case) claim the power to arbitrarily inject himself into matters pending before the EAB or ALJs. And, for good reason—it would raise significant due process problems. *See, e.g.*, *Utica Packing Co. v. Block*, 781 F.2d 71, 78 (6th Cir. 1986).

confirm that agencies are bound by their own regulations.

Finally, EPA suggests that even if ALJs are principal officers, the appropriate remedy would be severance of the for-cause removal restriction. Opp. 10. But that question is not before the Court, which need decide only whether Ro Cher is likely to succeed on its claim that EPA suffers from an Appointments Clause violation. *Cf. Arthrex*, 141 S. Ct. at 1986 (plurality opinion) ("turn[ing] to the appropriate way to resolve" the case *after* finding a "violation of the Appointments Clause"). And Ro Cher is likely to succeed on this claim.

## II. PLAINTIFF IS LIKELY TO SUCCEED ON ITS SEVENTH AMENDMENT CLAIM

### A. Defendants Do Not Dispute that EPA's Action Is Analogous to a Suit at Common Law

In its opening brief, Ro Cher demonstrated that it satisfied the two factors that determine whether EPA's action is a "Suit[] at common law" under the Seventh Amendment. Pl. Br. 12. Specifically, (1) EPA's civil-penalty suit here, as in *Tull v. United States*, is "a particular species of an action in debt . . . within the jurisdiction of the courts of law," and, more importantly, (2) the remedy sought by EPA—up to $46,989 per violation per day—is a remedy "intended to punish culpable individuals" and was traditionally "issued by courts of law, not courts of equity." 481 U.S. 412, 418, 421, 422 (1987) (citations omitted); *see also* Pl. Br. 12–13. The government does not contest either factor; the Court should consider them conceded.

### B. The Public Rights Doctrine Does Not Apply

Instead, EPA focuses on *Atlas Roofing Co. v. Occupational Safety and Review Comm'n*, 430 U.S. 442 (1977), which said Congress could "assign" so-called "public

rights" adjudications to agencies. *See* Opp. 14–18.[3] But as Ro Cher showed in its opening brief, the Court has significantly narrowed *Atlas Roofing*. Pl. Br. 13–15. Under current jurisprudence, "Congress [cannot] conjure away the Seventh Amendment by mandating that traditional legal claims be brought [in equity] or taken to an administrative tribunal." *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 52 (1989).

According to EPA, however, *Tull* and *Granfinanciera* "reaffirmed" that Congress may, consistent with the Seventh Amendment, "authorize[] administrative agencies to adjudicate civil penalties when the government seeks to enforce a statutory claim pursuant to an otherwise valid statute." Opp. 16. But *Tull* held that a jury was required when EPA sought civil penalties under the Clean Water Act. To be sure, *Tull* didn't upset the basic understanding that the Seventh Amendment does not apply to administrative proceedings—since ALJs do not empanel juries—but *Tull* cannot be read to say that Congress may evade the Seventh Amendment by assigning actions to an administrative body. Indeed, as the Supreme Court said in *Granfinanciera*, "Congress cannot eliminate a party's Seventh Amendment right to a jury trial merely by relabeling the cause of action to which it attaches and placing exclusive jurisdiction in an administrative agency . . . ." 492 U.S. at 61.

EPA here tries to do just that, by relabeling its common-law action in debt as a public-rights claim, on the ground that TSCA was designed to protect the public. Opp. 17–18. That logic sweeps far too broadly: criminal laws are designed to protect

---

[3] EPA also relies on cases decided in a very different administrative landscape, *see* Opp. 14 (citing cases from 1893 and 1909), and a Seventh Circuit opinion issued only one year after *Atlas Roofing* (*Rosenthal & Co. v. Bagley*, 581 F.2d 1258 (7th Cir. 1978)).

the public, but no one would suggest Congress may assign criminal cases to jury-less agencies. *See Spokeo v. Robins*, 578 U.S. 330, 345 (2016) (Thomas, J., concurring) (citations omitted); *SEC v. Jarkesy*, No. 22-859, 2023 WL 9375564, Tr. of Oral Arg., at *82–83 (U.S. Nov. 29, 2023) (Barrett, J.) ("Congress always, we hope, is acting in the public interest.").

EPA misses the point again when it says that the "right" of lead-hazard disclosure did not exist at common law and that "public rights" include things like "'administrative compliance with environmental protection statutes and regulations.'" Opp. 17, 18 (citation omitted). These same types of "rights" were at issue in *Tull*, which held nonetheless that a jury was required because EPA sought civil penalties in an action that was "clearly analogous to the 18th-century action in debt," and "[a]ctions by the government to recover civil penalties under statutory provisions . . . historically have been viewed as one type of action in debt requiring trial by jury." *Tull*, 481 U.S. at 418–20. EPA brings the same type of claim here.[4]

In sum, the Seventh Amendment is properly understood to require *any* claim involving legal rights and remedies—including those brought by the federal government—to be tried before a jury. *See Parsons v. Bedford, Breedlove & Robeson*, 28 U.S. (3 Pet.) 433, 447 (1830); *United States v. Wonson*, 28 F. Cas. 745, 750 (C.C.D. Mass. 1812) (Story, J.); Suja A. Thomas, *A Limitation on Congress: "In Suits at Common Law"*, 71 Ohio St. L.J. 1071, 1106 n.227 (2010). EPA's version of the public-rights

---

[4] EPA cites *Vidikis v. EPA*, 612 F.3d 1150 (11th Cir. 2010), to claim that courts have "upheld administrative assessment of penalties under the very same lead-based paint rules." Opp. 18. But it appears that the petitioner in that case raised no arguments relating to a jury trial right, and there is no indication the Eleventh Circuit considered it.

doctrine and its supposedly forum-dispositive application do not withstand scrutiny. Even in its first decision recognizing a category of "public rights," the Supreme Court clarified that "[t]o avoid misconstruction upon so grave a subject, we think it proper to state that we do not consider congress can either withdraw from judicial cognizance any matter which, from its nature, is the subject of a suit at the common law, or in equity, or admiralty . . . ." *Murray's Lessee v. Hoboken Land & Improvement Co.*, 59 U.S. 272, 284 (1856).

While noting that "[its] discussion of the public rights exception . . . has not been entirely consistent, and the exception has been the subject of some debate," *Stern v. Marshall*, 564 U.S. 462, 488 (2011), the Supreme Court, consistent with *Murray's Lessee*, has limited the public-rights exception to the Seventh Amendment so that the focus is on the nature of the claim rather than the forum, *Granfinanciera*, 492 U.S. at 52. The Court's oral argument in *SEC v. Jarkesy* confirms that the Seventh Amendment has its own force and does not necessarily turn on where Congress tries to "assign" a case.

At issue (among others) in *Jarkesy* is "[w]hether statutory provisions that empower the Securities and Exchange Commission (SEC) to initiate and adjudicate administrative enforcement proceedings seeking civil penalties violate the Seventh Amendment." *Jarkesy* Pet. Br., No. 22-859, 2023 WL 5655520, at *I (U.S. Aug. 28, 2023). This question occupied most of the oral argument, indicating that many members of the Court reject the government's attempt to re-expand the public-rights doctrine such that the forum is controlling. *See, e.g.*, *Jarkesy* Tr., 2023 WL 9375564, at

\*26–27 (Kavanaugh, J.) ("[I]t does seem odd from a constitutional perspective to say that a private suit triggers the Article III right to a federal court and a jury, . . . but a government suit against you for money is somehow exempt from those Article III and Seventh Amendment and due process requirements simply because the government attaches a different label."); *id.* at \*32 (Barrett, J.) ("So it seems to me, if you have an entitlement to a jury if you're in a federal court, I don't understand then how you [do] not have that right, how it can go to an agency."); *id.* at \*37 (Jackson, J.) ("[F]or me, the answer is not starting with, where is [the action] taking place? It's starting with, what is the claim or the duty at issue?"); *id.* at \*43 (Roberts, C.J.) ("That's not just one place or another. It seems to me that undermines the whole point of the constitutional protection in the first place."); *id.* at \*46–47 (Alito, J.) ("[D]oesn't that seem like a pretty patent evasion of the Seventh Amendment to say this protection which was regarded at the time of the adoption of the Bill of Rights as sufficiently important to merit inclusion in the Constitution can be nullified simply by changing the label that is attached to a tribunal?").

\* \* \*

In this case, (1) EPA's civil-penalty claim against Ro Cher is "a particular species of an action in debt . . . within the jurisdiction of the courts of law," and, more importantly, (2) EPA's proposed remedy—up to $46,989 per violation per day—is a remedy "intended to punish culpable individuals" and was traditionally "issued by courts of law, not courts of equity." *Tull*, 481 U.S. at 418, 421, 422. Therefore, Ro Cher is likely to succeed on its Seventh Amendment claim.

### C. The Court Should Preliminarily Enjoin EPA's In-House Action at Least Until the Supreme Court Decides *SEC v. Jarkesy*

As explained below, EPA's in-house action has inflicted and continues to inflict upon Ro Cher an irreparable injury, while EPA has alleged no harm to the public if its action is paused. Ro Cher thus submits that an injunction is warranted even if the Court finds some question about the scope of the public-rights doctrine, since the Supreme Court is likely to further clarify its Seventh Amendment jurisprudence in *SEC v. Jarkesy*. Therefore—even if the Court is unsure as to the scope and viability of the public-rights doctrine or its application to Ro Cher's otherwise unchallenged argument that the EPA's action is a suit at law under the Seventh Amendment—the Court should err in favor of Ro Cher's likelihood of success on the merits here and grant a preliminary injunction—effectively staying the EPA action pending further briefing after the decision in *Jarkesy*—to protect Ro Cher's constitutional rights and conserve judicial (and executive branch) resources.

### III. RO CHER IS SUFFERING A CONTINUING IRREPARABLE HARM

Flatly ignoring the Supreme Court's decision in *Axon*, EPA claims that Ro Cher must do more than allege that "being subjected to an adjudication" constitutes an irreparable harm. Opp. 19. But the "harm" recognized in *Axon* was "being subjected to unconstitutional agency authority." 598 U.S. at 191 (cleaned up); *see id.* ("That harm may sound a bit abstract; but this Court has made clear that it is 'a here-and-now injury.'") (quoting *Seila Law LLC v. CFPB*, 140 S. Ct. 2183, 2196 (2020)).

And, precisely because Ro Cher's harm is "*being* subjected to" unlawful agency authority, it is an ongoing (irreparable) harm. Therefore, contrary to EPA (Opp. 19),

- 10 -

Ro Cher need not show that EPA's hearing will likely end before this Court can rule on the merits. Ro Cher is—today—suffering irreparable harm, and it will continue to suffer irreparable harm unless the Court enjoins EPA's proceeding. As *Axon* explained, the end of EPA's hearing would make it "impossible to remedy" Ro Cher's harm. 598 U.S. at 191. Post-hearing judicial review would come too late because an order vacating EPA's administrative decision would do nothing to remedy the harm now being suffered by Ro Cher. Therefore, Ro Cher need not—indeed, cannot—wait for its constitutional injury to come to an end before an injunction may be issued. *Id.*; *cf. also Ezell v. City of Chicago,* 651 F.3d 684, 698 (7th Cir. 2011) (reversing district court's denial of an injunction because the district court misconstrued the "relevant constitutional harm").

## IV. AN INJUNCTION HERE WOULD SERVE THE PUBLIC INTEREST

An order that temporarily enjoins EPA from continuing its in-house action against Ro Cher would have no effect whatsoever beyond *that* action. EPA fails to show otherwise. Instead, EPA worries that an "injunction *that impedes EPA's ability* to fulfill [TSCA's] directive" will undermine TSCA. Opp. 20 (emphasis added). But EPA offers no evidence that an injunction here *could* impede EPA's ability to enforce TSCA, or that the "prophylactic" purposes of TSCA (*id.*) would be threatened in any way. EPA remains free to investigate and prosecute alleged TSCA violations. In this case, however, all (alleged) harm occurred in the past, and EPA doesn't suggest a possibility of future injury arising out of an injunction *here*. Therefore, neither the government nor the public at large is even threatened with an injury. The Court should disregard EPA's speculations.

Here, "[t]he public interest is not served by letting an unconstitutionally structured agency continue to operate until the constitutional flaw is fixed. And in this circumstance, the equities favor the people whose liberties are being infringed, not the unconstitutionally structured agency." *John Doe v. CFPB*, 849 F.3d 1129, 1137 (D.C. Cir. 2017) (Kavanaugh, J., dissenting).

## CONCLUSION

The Court should issue a preliminary injunction enjoining EPA's administrative enforcement proceeding, *In the Matter of Ro Cher Enters., Inc.*, EPA Dkt. No. TSCA-05-2023-0004.

DATED: February 12, 2024.

Respectfully submitted,

 *s/ Oliver J. Dunford*
OLIVER J. DUNFORD
N.D. Ill. Bar No. 1017791
Pacific Legal Foundation
4440 PGA Boulevard, Suite 307
Palm Beach Gardens, FL 33410
916.503.9060
odunford@pacificlegal.org

MOLLY E. NIXON
N.Y. Bar No. 5023940*
Pacific Legal Foundation
3100 Clarendon Boulevard, Suite 1000
Arlington, VA 22201
202.888.6881
mnixon@pacificlegal.org
  **Admitted Pro Hac Vice*

*Attorneys for Plaintiff
Ro Cher Enterprises, Inc.*
